SAMUEL ATKIN et al., Appellants, *v.* HILL, DARLINGTON & GRIMM et al., Respondents.

First Department, June 17, 1965.

*Arnold I. Burns* of counsel (*Milton E. Mermelstein* and *Erwin Cherovsky* with him on the brief; *Mermelstein, Burns & Lesser*, attorneys), for appellants.

*Thomas W. Hill, Jr.*, of counsel (*Alfred Lawrence Toombs* with him on the brief; *Spear & Hill*, attorneys), for respondents.

*Per Curiam.* A majority of the court votes to affirm Trial Term's verdict in favor of the defendants, though not all of the court are in agreement with the conclusion that the transactions proved constituted an offering to the public in this State as provided for by subdivision 6 of section 51 of the Insurance Law.

Affirmance despite this divergence of view with Trial Term is

predicated on what was established at the trial as distinct from what could be ascertained to be the facts on the motion for summary judgment when the matter was previously before the court (15 A D 2d 362). It is not every sale in derogation of the statute that can be rescinded. The purpose of the statute is, we believe, to prevent unlicensed foreign insurance companies from getting financing by offering their stock here by public sale. This court held that any buyer caught in such an operation could rescind the sale. The statute was not designed to allow a speculator to buy stock in such a company from a third person — neither the company nor one engaged in distributing its stock — and rest secure in the knowledge that if the stock turned out to be an advantageous investment he could keep it, and if not he could force the seller to take it back. In our opinion the record reveals just such a situation.

EAGER, J. (dissenting). The judgment for the defendants is not supported by the record. The statute (Insurance Law, § 51) was intended to prevent transactions of the nature involved here.

The purpose and construction of said section 51, including subdivision 6 thereof, was considered and fully discussed in the opinion of Presiding Justice BOTEIN, speaking for a unanimous court, on the prior appeal from the order denying plaintiffs' motion and defendants' cross motion for summary judgment. (*Atkin* v. *Hill, Darlington & Grimm,* 15 A D 2d 362, affd. 12 N Y 2d 940.) As therein concluded, a paramount aim of the statute was public protection; and, in this connection, the statute was not intended solely as a bar of sales " in connection with the promotion or the initial distribution of the securities " of foreign insurers, not authorized to do business here. (*Ibid.,* p. 372.) It was also intended to effect a continued bar against all unlicensed sales of such securities until they had become available on the New York market.

It was recognized that eventually proscribed securities of foreign insurance companies could be imported into the State in breach of the regulatory provisions. Therefore, while a good reason existed for flatly barring sales within the State during and for a reasonable time after public distribution of the stock, it was anticipated that after distribution with importation, unlawful or otherwise, of the stock into the State, a market in the stock might be developed here. Then, a restriction on the sale thereof would no longer be required for the protection of the public, and, in fact, the lifting of the bar would be beneficial to those innocent purchasers here who might have acquired the

stock. So, subdivision 6 was added, providing that the licensing requirements "shall not apply to the selling or proposing to sell securities after one year from the first date upon which the security was offered to the public in this state." (Insurance Law, § 51, subd. 6.) As pointed out by the minutes of the Department Committee on the Insurance Law Revision, the said subdivision 6 exemption was "to prevent the section from being applicable to the stock of recognized insurance companies which has been dealt in on the exchanges or over-the-counter by a great many private individuals, and all stock which has been on the market for more than a year will then become exempt." (See, further, *Atkin* v. *Hill, Darlington & Grimm, supra,* p. 369.)

Subdivision 6 speaks of an offering of the security "to the public in this state." On the basis of the legislative history and bearing in mind the purposes of the statute, the said subdivision contemplated an offering of such nature as to establish the general availability of the stock in the State in such quantities and under such circumstances that a market for the stock had developed or would develop. Thus, for instance, as Presiding Justice Botein pointed out in his opinion, if it was "found that the security had been traded in the over-the-counter market for at least a year" (*Atkin* v. *Hill, Darlington & Grimm, supra,* p. 368), one would have a right to assume that the restrictions on the sale were removed. Clearly, however, the statutory criterion of an offering "to the public in this state" is not satisfied by a showing of sales of insignificant amounts of the stock to a few individuals in the State or the publishing of a few over-the-counter quotations of bid or offering prices for the stock, without evidence of any trading therein. (Cf. *Securities & Exch. Comm.* v. *Ralston Purina Co.,* 346 U. S. 119, 125.)

The critical period here was the year 1957. The first sales by the defendants of the stock to the plaintiffs occurred in January, 1959. Trial Term's conclusion that there had been an offering of the stock to the public in this State at least one year prior to such sales was grounded principally upon the proof of three 1957 sales in the State and five over-the-counter quotations in 1957. The 1957 sales were to three New York residents of a total of 155 shares by a Colorado brokerage firm or firms. In addition, there was the proof of the five quotations in 1957 in the "pink sheets", which were the over-the-counter quotations published by the National Quotation Bureau, Inc. and available to broker-dealer subscribers. These "pink sheet" quotations consisted of an October 10, 1957 bid by New York brokers of "5" for 40 shares; a November 10, 1957 request of "offerings"

for the stock; a November 20, 1957 bid of 6½ by a New York brokerage firm for an unspecified quantity of the stock; a November 20, 1957 bid and asked quotation by a New York broker, indicating an interest to buy or sell the stock at " 6½-7½ "; and a December 12, 1957 bid and asked quotation by a New York brokerage firm of " 5-5½ " for the stock. Except as specified in the one quotation, there was no indication of what quantities of the stock were available for purchase or sale. Furthermore, there is no evidence whatever of any trading in or sale of the stock on the over-the-counter market.

Trial Term also referred to evidence of a few transactions " in the early part of 1958 ", and stated that these were " based upon offers made in 1957 ", but there is no evidence of any such offers in connection with these 1958 transactions.

There was no proof of any trading in the stock in the State in 1957 or of the then availability to the public in the State of any substantial quantity of the stock. In its cumulative effect, the proof here amounted to no more than a showing that, in 1957, the particular stock was available to individuals in the State in very limited or uncertain quantities. A case for applicability of the subdivision 6 exemption is not established by proof merely of unlicensed sales of insignificant quantities of the security in the State to a very few individuals or by proof of a very few bid or offered quotations on the over-the-counter market. Under the circumstances, the defendants failed to sustain the burden of establishing that the stock had been " offered to the public in this state " at least a year prior to the sales to plaintiffs.

This court, on the prior appeal, unanimously held that the remedy of rescission was available to the plaintiffs, and therefore, I would reverse the judgment for defendants and direct judgment for the plaintiffs for the amount demanded, with interest and costs.

RABIN, McNALLY and STEUER, JJ., concur in *Per Curiam* opinion; EAGER, J., dissents in opinion, in which BOTEIN, P. J., concurs.

Judgment affirmed, with $25 costs to defendants-respondents against plaintiffs-appellants and with $25 costs to third-party defendant-respondent against third-party plaintiffs-appellants. [See 24 A D 2d 562.]