**H. S. EQUITIES, INC., Plaintiff,**

v.

**HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant.**

**No. 74 Civ. 5114.**

United States District Court,
S. D. New York.

Nov. 22, 1978.

---

**84**

Seward & Kissel, New York City, for plaintiff.

Bigham, Englar, Jones & Houston, New York City, for defendant.

## OPINION

VINCENT L. BRODERICK, District Judge.

### I

On November 24, 1974, H.S. Equities, Inc. ("HS")[1] commenced this action against Hartford Accident & Indemnity Company ("Hartford") under a Brokers' Blanket Bond ("the Bond") that had been issued by Hartford to HS on October 29, 1967.[2] Hartford proceeded on a third party complaint herein against Marvin Michael, a former registered representative of HS. The relief sought by HS is judgment against Hartford for moneys paid by HS in connection with the settlement of an action entitled *Paul H. Odessey and Rosaline L. Odessey v. Hayden Stone Inc. and Marvin Michael,* 69 Civ. 5444 ("Odessey action").

The Odessey action was commenced in the Southern District of New York in 1969. Plaintiffs therein claimed violations of the federal securities laws and the Commodities Exchange Act, breach of fiduciary duty, and negligence. The primary allegations of the complaint were that Michael, a registered representative in the employ of HS (then Hayden Stone), churned the Odesseys' securities accounts, engaged in unauthorized transactions, and made fraudulent misrepresentations to the Odesseys.

*Prior Proceedings.* Michael moved for summary judgment herein on the ground that in 1973 HS had released him from all liability in connection with the handling of the Odessey accounts, including the alleged churning thereof. Hartford moved for summary judgment on the ground that by

---

1. In 1970 the name of Hayden Stone Incorporated was changed to "H.S. Equities, Inc." In this opinion both corporate entities will be referred to as "HS".

2. The jurisdiction of this court is properly invoked pursuant to 28 U.S.C. § 1332. There is diversity of citizenship *and* an amount in controversy that exceeds $10,000 exclusive of interest and costs.

releasing Michael without the knowledge or consent of Hartford, HS had injured the subrogation rights of Hartford. HS opposed Hartford's motion and moved for summary judgment on its claim.

Judge Metzner granted Michael's motion but denied the motions of Hartford and HS. Judge Metzner held that HS had in fact injured Hartford's right of subrogation by releasing Michael in the Odessey action but that a triable issue of fact subsisted:

> This release of the third party responsible for the loss discharges Hartford from its obligation under the bond *if it had not yet denied liability.*

(emphasis added). Memorandum Order dated November 10, 1976, pp. 3–4. Thus there was a triable issue of fact as to whether Hartford had denied liability under the Bond prior to the settlement of the Odessey action.

## II

*Plaintiff's contentions.* Plaintiff contends in this action that the matters complained of in the Odessey action—primarily churning by Michael and false representations by Michael to the Odesseys—would, if established, have constituted fraudulent or dishonest acts within the meaning of the Bond. Plaintiff further contends that Hartford is liable to it for attorneys' fees and disbursements incurred and paid in defending the Odessey action, pursuant to the Attorneys' Fees Clause of the Bond.

*Defendant's contentions.* Hartford contends that it has no liability to HS under the Bond. It claims that HS received commissions amounting to at least $360,000 with respect to transactions in the accounts of the Odesseys and that that sum should be set off against the amount which might otherwise be due under the Bond. It claims that HS settled the Odesseys' claims without the knowledge, consent or authority of Hartford. It also claims that a general release delivered by HS to Michael in connection with the settlement of the Odessey action was not authorized by Hartford, interfered with any rights of subrogation which Hartford might have had, and served

to discharge Hartford from liability under the Bond.

Hartford further maintains that the Odessey action, in the course of which HS incurred the attorneys' fees and costs sought herein, did not establish liability on the part of HS on account of any loss, claim or damage which would constitute a valid and collectible loss that was covered by the Bond; hence HS is not entitled to recover either the amount it paid in settlement of the Odessey action or the attorneys' fees and costs it incurred in connection with that action.

Hartford contends that it never denied liability under the Bond prior to the release of Michael and the settlement of the Odessey action. It claims that prior to the Odessey settlement it requested HS to forward copies of papers in the Odessey action but that HS failed to do so; this, it asserts, violated the Attorneys' Fee Clause of the Bond, and therefore the Attorneys' Fee Clause did not become operative.

## III

A bench trial was had herein. I find the following facts.

Plaintiff is a corporation organized under the laws of the State of Delaware and has its principal place of business at 83 Maiden Lane, New York, New York. From prior to 1964 through September 10, 1970, it was a stock broker and dealer duly registered as such with the Securities & Exchange Commission. Marvin Michael was employed by defendant as a registered representative from 1964 through September 10, 1970.

Defendant is a corporation engaged in the insurance business, as a part of which it issues brokers' blanket bonds to persons and entities engaged in the stock brokerage business. It is organized under the laws of the State of Connecticut, and its principal place of business is in Hartford, Connecticut.

For good and valuable consideration defendant issued the Bond to plaintiff. The Bond was in effect from October 29, 1967 until after the settlement of the Odessey

action. It contained, *inter alia*, a "Fidelity" clause under which plaintiff was insured against any loss "through any dishonest, fraudulent or criminal act of any of the Employees, committed anywhere and whether committed alone or in collusion with others, including loss of Property through any such act of any of the Employees." The Bond also contained a clause under which plaintiff was indemnified against court costs and attorneys' fees incurred in defending any legal proceeding with respect to a claim against plaintiff to enforce plaintiff's "liability or alleged liability on account of any loss, claim or damage" which, if established against plaintiff, "would constitute a valid and collectible loss" sustained by plaintiff under the Bond.

On December 10, 1969 the Odessey action was commenced in this court by two customers of plaintiff against HS and Marvin Michael. HS retained the law firm of Morrison, Paul & Beiley as its counsel and so notified Hartford by letter dated January 20, 1970. Hartford elected not to conduct the defense of the Odessey action. HS did not object.[3] Michael retained separate counsel. HS sent copies of the complaint and the answers in the Odessey action to Hartford on February 26, 1970, and a claim file relating to the matter was prepared by Hartford.

Hartford made known to HS its intention not to honor HS's claim under the Bond with respect to the Odessey action. This constituted a denial of liability, and HS was notified of this denial of liability prior to January 2, 1973. HS acted reasonably in the context of having received the information that defendant denied liability.

On December 28, 1972 and on January 2, 1973 HS advised Hartford that settlement of the Odessey action was being discussed.

On advice of counsel and in good faith, HS settled the Odessey action, paying the Odessey plaintiffs $122,000 plus interest of $1,828.75. Michael paid the Odessey plaintiffs $40,000, consisting of $15,000 from personal funds and $25,000 from his share of a HS profit sharing plan. As part of the settlement the Odesseys executed and delivered releases in favor of HS and Michael. HS executed and delivered releases in favor of the Odesseys, and Michael executed and delivered releases in favor of the Odesseys and HS.[4]

In connection with the defense of the Odessey action, HS incurred and paid attorneys' fees of $45,618.25 and disbursements of $1,725. Such fees and disbursements were reasonable in amount.

HS paid all premiums required to be paid under the Bond. On January 20, 1970 it gave Hartford written notice of the pendency of the Odessey action. It gave Hartford written notice of the settlement of the Odessey action and the terms thereof on January 30, 1973. It provided Hartford on March 15, 1974 with a proper itemized proof of claim. HS commenced this action within two years of settlement of the Odessey action. HS has complied with all that was required of it by the Attorneys' Fee Clause of the Bond.

No payment has been made by Hartford to HS on account of the sum paid by HS to the Odesseys in settlement of the Odessey action, or on account of the attorneys' fees and costs incurred and paid by HS in connection with the Odessey action. Payment has been duly demanded.

## IV

▮ It has already been held in this action that a loss within the coverage of the

---

3. Hartford's decision not to assume the defense of the Odessey action was a proper exercise of its contractual rights and is not the basis for the factual finding, *infra*, that Hartford denied liability under the Bond with respect to the Odessey claim. *Cf. Russell Gasket Co. v. Phoenix of Hartford Ins. Co.*, 512 F.2d 205, 209 (6th Cir. 1975) (insurer's conduct in denying that insured's losses were covered by policy insur-

ing against employee fraud and dishonesty and in standing by idly while insured pursued wrongdoers constituted an estoppel and a waiver of insurer's claim that insured had violated insurer's alleged subrogation rights).

4. The Administrative Committee of HS Incorporated Profit Sharing Plan and Michael also exchanged releases.

Bond may arise from an employee's dishonesty directed against a customer of his employer:

> The bond insures against plaintiff's losses due to the dishonesty of its employee. There is no indication that this requires the dishonesty to be directed at the employer.

Memorandum Order of Judge Metzner herein dated November 10, 1976, p. 5 (granting summary judgment to Michael and denying summary judgment motions of · Hartford and HS.)

■ If the facts alleged in the Odessey action had been proved, they would have established the existence of dishonest or fraudulent acts as those terms are used in the Bond. *See e. g., Norris & Hirshberg, Inc. v. Securities & Exchange Commission,* 85 U.S.App.D.C. 268, 177 F.2d 228, 232 (1949); *HS Equities, Inc. v. Insurance Company of North America,* 71 Civ. 3656 (S.D. N.Y. October 24, 1973); *Moscarelli v. Stamm,* 288 F.Supp. 453, 457–58 (E.D.N.Y. 1968) (churning is a "deceptive device" within the meaning of Section 10(b) of the Securities and Exchange Act); *Hecht v. Harris, Upham & Co.,* 283 F.Supp. 417, 431–433 (N.D.Cal.1968) (churning is "a device to defraud" within the meaning of S.E.C. Rule 10b–5), *modified on other grounds,* 430 F.2d 1202 (9th Cir. 1970); *Lorenz v. Watson,* 258 F.Supp. 724, 733 (E.D.Pa.1966). Thus I find that the allegations of misconduct contained in the *Odessey* complaint brought that suit within the coverage of the Bond. *See National Surety Corp. v. Rauscher, Pierce & Co.,* 369 F.2d 572, 575 (5th Cir. 1966), *cert. denied,* 386 U.S. 1018, 87 S.Ct. 1375, 18 L.Ed.2d 456 (1967).

■ Hartford was given the opportunity to defend the *Odessey* action but declined to do so.[5] Since the claim asserted in *Odessey* came within the coverage of the Bond, the defendant must pay the amount of the settlement made by plaintiff which, I find, was a reasonable settlement made in good faith: [6]

> If . . . the indemnitor declines to defend the proceeding, and the indemnitee is therefore required to carry that burden, then the indemnitor is conclusively bound by any reasonable good faith settlement the indemnitee may make or any litigated judgment that may be rendered against him. [citations omitted]

*Feuer v. Menkes Feuer, Inc.,* 8 A.D.2d 294, 299, 187 N.Y.S.2d 116, 121 (1st Dep't 1959) (dictum) (Breitel, J.).

## V

With respect to Hartford's obligation to reimburse HS for the reasonable attorneys' fees incurred in defending the Odessey action, I find that the Bond provides that whenever a complaint sets forth a claim which *could* lead to a "loss" within the coverage of the Bond were HS to be unsuccessful at trial, Hartford will reimburse HS for its attorneys' fees if HS loses the action (*i. e.,* liability is established), if HS prevails (*i. e.,* is not found liable), or if the action is settled:

> [Hartford] will indemnify the Insured against court costs and reasonable attorneys' fees incurred and paid by the Insured in defending any suit or legal proceeding brought against the Insured to enforce the Insured's liability *or alleged liability* on account of any loss, claim or damage *which, if established against the Insured, would constitute a valid and collectible loss sustained by the Insured under the terms of this bond.* . . . (emphasis added).

---

**5.** Hartford denied liability under the Bond prior to the settlement of the Odessey action and the exchange of releases in connection with that settlement. HS's settlement of the Odessey action therefore did not prejudice HS's rights against Hartford. *Bunge Corp. v. London and Overseas Insurance Co.,* 394 F.2d 496, 497 (2d Cir.) *cert. denied,* 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968).

**6.** Since the Odessey action was settled prior to trial, there has, of course, been no finding by any court or jury that the allegations of the Odessey suit were true. Nor has there been any finding in this action that those allegations are true.

*See Fidelity Savings & Loan Ass'n v. Republic Ins. Co.,* 513 F.2d 954, 955 (9th Cir. 1975); *National Sur. Corp. v. Rauscher, Pierce & Co.,* 369 F.2d 572, 576–77 (5th Cir. 1966), *cert. denied,* 386 U.S. 1018, 87 S.Ct. 1375, 18 L.Ed.2d 456 (1967); *Hepler v. Fireman's Fund Ins. Co.,* 239 So.2d 669, 677 (La.App.1970); *National Surety Corp. v. First Nat. Bank of Midland,* 431 S.W.2d 353, 354–55 (Tex.1968).[7]

■ The claim of the Odesseys could have led to a "loss" within the coverage of the Bond. The action was settled. Accordingly, HS is entitled to attorneys' fees and costs incurred in defending the Odessey action, as well as moneys expended in settling that action, the reasonableness of which sums has not been contested.

## VI

■ Commissions of about $600,000 were generated by the activities of Michael in the Odesseys' accounts; some $360,000 of that sum was received by HS. This is far in excess of the settlement paid. Judge Metzner has already held—and I agree—that Hartford is not entitled to a set-off:

> A reading of the language in the bond reveals no limitations on the type or amount of losses covered. There is no requirement to balance the loss against past profit. All that is required is that such loss be due to the dishonest or fraudulent act of an employee. *National Surety Corporation v. Rauscher, Pierce & Co., Inc.,* 369 F.2d 572 (5th Cir. 1966) [, *cert. denied,* 386 U.S. 1018, 87 S.Ct. 1375, 18 L.Ed.2d 456 (1967)].

Memorandum Order dated November 10, 1976, pp. 4–5.

This opinion constitutes my findings of fact and conclusions of law under Rule 52(a), Fed.R.Civ.P.

Settle judgment on notice.

**7.** The case relied upon by Hartford, *Atkin v. Hill, Darlington & Grimm,* 44 Misc.2d 863, 254 N.Y.S.2d 867 (Sup.Ct. N.Y.Co.1964), *aff'd,* 23 A.D.2d 331, 260 N.Y.S.2d 482 (1st Dep't 1965) (*per curiam*), *aff'd mem.,* 18 N.Y.2d 980, 278 N.Y.S.2d 216, 224 N.E.2d 723 (1966), never reached the question posed here, namely, whether an actual loss due to an act covered by the Bond must be incurred before the insurer will be held liable for attorneys' fees. Dispositive in that case was the finding that the particular loss incurred by the insured was due to an act not within the coverage of the policy to begin with. It was therefore unnecessary for the court to interpret the attorneys' fee clause of the policy.