RICHARD MORTELL et al., Plaintiffs-Appellants and Cross-Appellees, *v.* INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellee and Cross-Appellant.

First District (1st Division) No. 82—1881

Opinion filed December 12, 1983.—Rehearing denied January 23, 1984.

Arvey, Hodes, Costello & Burman, of Chicago (Ralph A. Mantynband and

Andrew B. David, of counsel), for appellants.

Baker & McKenzie, of Chicago (Francis D. Morrissey, John W. Dondanville, Thomas A. Doyle, and William Lynch Schaller, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs, Richard Mortell, Alan Freeman, Leslie Rosenthal and Robert Myron, four partners doing business as Rosenthal & Company, appeal from a summary judgment entered against them in the trial court. Plaintiffs (hereinafter referred to as Rosenthal) had sought a declaratory judgment adjudicating their rights under two fidelity bonds issued by defendant, Insurance Company of North America (hereinafter referred to as INA). Plaintiffs sought a declaration that $2 million in losses, representing customer claims, the defense of those claims and the defense of an action by the Commodities Futures Trading Commission (CFTC) were covered by the bonds. Summary judgment against plaintiffs was entered on all but one of the claims, and defendant, INA, cross-appeals from the $133,000 judgment on the allowed claim.

The issues presented for review may be summarized as follows: (1) Whether summary judgment was proper with respect to claims discovered by the insured prior t the January 8, 1977, amendment to coverage in light of the alleged factual issue of timely notice to the insured of these losses; (2) Whether the January 8, 1977, amendment to coverage was valid and enforceable with respect to claims the insured delivered after this date; (3) Whether the policy clause which excludes coverage for losses resulting from acts of the insured's partners releases the insurer of any obligation to indemnify the insured for attorney fees spent in defending the CFTC action.

On cross-appeal, two issues are raised: (1) Whether the allowed claim was barred by failure to provide timely notice as required by the bond; and (2) Whether the trial court erred in entering a judgment in excess of the bonds $50,000 limit per occurrence.

Rosenthal is a licensed futures commodity merchant. In January 1975 Rosenthal procured two fidelity bonds from INA. The policies remained in effect until cancelled by INA on July 8, 1978. During the time the bonds were in effect Rosenthal paid INA $66,479 in premiums. The bonds, entitled Brokers Blanket Bonds, provided indemnity to Rosenthal for losses suffered as a result of dishonesty of their employees, and also as a result of forgery, theft and other such acts.

The record discloses that in March 1975 plaintiff hired a certain Richard Taylor to become manager of its Dallas branch office. Soon

after being hired, Taylor expressed interest in selling London commodities option contracts through the Dallas branch office. Taylor had sold these options in his previous position as manager of the Dallas branch of another commodities broker. Because at the time there was a question as to whether the Texas Securities Commissioner would allow these options to be sold in Texas, plaintiffs opened offices in other cities throughout the country to market London commodities options. Between July 1975 and early spring, 1976, plaintiffs opened approximately 20 branch offices under the name "Rosenthal & Company, Taylor-Grant Division."

In May 1976, plaintiffs learned that the CFTC was investigating the Taylor-Grant Division's marketing of London commodities options. The CFTC is a Federal agency organized to regulate the commodities industry. (See *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran* (1982), 456 U.S. 353, 72 L. Ed. 2d 182, 102 S. Ct. 1825.) Under the Commodity Exchange Act (7 U.S.C. sec. 1 *et seq.* (1976 & Supp. IV 1980)) the CFTC may initiate investigations of and file complaints against commodity professionals and provide a reparations procedure for customer claims based upon violations of the Act. Complaints may be heard before an administrative law judge or by way of application for an injunction in the Federal district court or both. (7 U.S.C. secs. 9, 13a—1 (1976).) The CFTC investigation resulted in the CFTC filing a complaint for injunctive relief in the United States District Court of the Northern District of Illinois in October 1976. The complaint named Rosenthal, its general partners and certain of its employees as defendants. In April 1977, the CFTC filed an administrative complaint containing the same allegations against the same defendants. The CFTC alleged that each of the defendants had engaged in cheating, defrauding and deceiving purchasers or prospective purchasers of London commodity options in violation of the Commodity Exchange Act and regulations thereunder (7 U.S.C. sec. 6c(b) (1976); 17 C.F.R 93269). The CFTC complaint specifically charged that the defendants had engaged in or had directed and caused company salesmen to engage in a high pressure sales campaign conducted by repeated, unsolicited long distance telephone calls to persons who were inexperienced as to London commodity options transactions. These persons were told false and deceptive statements about profit expectations of London commodity options and were deceptively urged to purchase options immediately to take advantage of a purported favorable market price for such options.

The CFTC further alleged that defendants had hired and directed numerous salesmen who lacked knowledge of the risks and trading

mechanics of London commodity options. Defendants provided these salesmen with glowing, but deceptive and misleading, "canned" sales speeches to read over the telephone to prospective customers. Defendants instructed these salesmen to provide only minimal information, to conceal material facts and to avoid unfavorable explanations concerning the recommended purchase of such options. In addition, the complaints alleged that the defendants have directly or indirectly concealed and misrepresented the true nature of the purchase price, including all fees and mark-ups, which customers pay to the company for the purchase of options and concealed the fact that the company marks up the price of each option purchased from the London markets from between 40% and 150%.

The initial complaints filed by the CFTC requested only that Rosenthal be enjoined from engaging in the fraudulent and deceptive selling practices allegedly employed in their marketing of London commodity options. In April 1978, the CFTC amended its Federal court complaint to seek disgorgement of all options, premiums, salaries, commissions and mark-ups received by defendants from their commodity options customers in the amount of $55,143,389.

An evidentiary hearing was held before an administrative law judge for the CFTC between May 1979 and January 1980. Thereafter, the parties submitted briefs and on November 21, 1981, the administrative law judge rendered his opinion finding that the evidence failed to establish that the defendants had violated the Commodities Exchange Act or Commission regulations as alleged. Two months later the Federal district court dismissed the CFTC complaint without prejudice "for want of equity."

A number of customers also filed complaints against Rosenthal alleging that Rosenthal salesmen made false or deceptive statements or withheld material information regarding London commodity options. These customers sought rescission of their transactions with Rosenthal pursuant to the Commodity Exchange Act (7 U.S.C. sec. 6b (1976)). The record does not show when the various claims were filed nor does the record show what the allegations in each complaint were. The parties have indicated that the claims arose between 1976 and 1978 and involve similar allegations of salesmen's dishonesty. Rosenthal has also stated that many have been settled or resolved through litigation.

The record reveals the following transactions between INA and Rosenthal. Soon after the Federal lawsuit was filed by the CFTC, members of Rosenthal's staff met with its insurance brokers and INA to discuss the lawsuit. At that time a copy of the CFTC complaint

was provided to INA. On January 8, 1977, INA requested Rosenthal to sign an amendment to the broker blanket bonds then in effect. Rosenthal signed that amendment. The premiums due on the bonds were neither increased nor decreased. On July 26, 1977, INA notified Rosenthal of its intention to cancel the fidelity bonds. Discussions between INA and Rosenthal ensued, following which INA withdrew the cancellation notice and the bonds remained in full effect. When the CFTC amended their complaint to request disgorgement of monies received by Rosenthal from its commodity options customers, additional meetings between INA and Rosenthal were held. At these meetings Rosenthal discussed not only the amended CFTC complaint but also numerous customer complaints which had been filed against Rosenthal. Rosenthal provided INA with a list of the customer complaints and gave INA unlimited access to Rosenthal's files on these complaints. After reviewing Rosenthal's files, INA cancelled the fidelity bonds effective July 8, 1978. This action followed.

Rosenthal filed a complaint in the circuit court of Cook County seeking a declaratory judgment adjudicating the rights and duties of the parties under the broker's blanket bonds and requested a hearing to determine the sums due Rosenthal on the bonds.

The trial court granted INA's motion for summary judgment on the issue of whether the claimed losses were covered by the fidelity bonds. With respect to the affirmative defenses raised by INA, the court ruled that whether there was timely notice was an issue of fact not necessary for the disposition of this case. Additionally, the court ruled that one claim, the claim of Marie Auditore, was covered by the bonds and the court ordered that INA pay the Auditore claim within the policy's limit of $50,000 plus reasonable attorney fees and costs.

The first issue raised by Rosenthal challenges the trial court's decision to deny Rosenthal indemnity for the customer reparations claims. The fidelity bonds at issue provide coverage for dishonest acts which are discovered during the bond period even if the acts occurred before the bond period. Although the record does not indicate when the numerous customer claims were discovered by Rosenthal, for the purpose of the motion for summary judgment, the parties separated the claims hypothetically into those which were discovered before January 8, 1977, the day Rosenthal signed the amendment to the bonds and those discovered afterwards.

The dishonesty clause in the bonds issued to Rosenthal in 1975 provided that covered losses included:

"Loss through any dishonest or fraudulent act of any of the Employees, committed anywhere and whether committed di-

rectly or by collusion with others, including loss of Property through any such acts of any of the Employees."

Rosenthal argues that under the case *Home Indemnity Co. v. Reynolds & Co.* (1962), 38 Ill. App. 2d 358, 187 N.E.2d 274, the dishonesty clause quoted above provides coverage for the activities its employees are accused of committing in the customer reparation claims.

In *Home Indemnity*, the issuer of a brokers' blanket bond sought a declaratory judgment that it was not obligated under the bond. Certain salesmen employed by the insured had solicited sales of securities not registered in Illinois in violation of the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1957, ch. 121½, par. 137.1 *et seq.*). Under the act, purchasers of unregistered stock were entitled to rescind the stock transaction. Home Indemnity contended *inter alia* that the acts of the employees were not dishonest within the meaning of the bond. The court stated that the word "dishonest" as used in the fidelity bonds had been interpreted to include "an act manifestly unfair to the employer and palpably subjects him to the likelihood of a loss." The court also relied upon a description of a dishonest act as one which "indicates a reckless disregard for the interest of the employer." The court noted that "it is not a necessary condition that the employee personally profit from his acts." Acts which cannot be considered dishonest within the meaning of the fidelity bond include acts resulting from mere negligence, mistake, error or incompetence. The court also determined that if reasonable men could differ on the issue whether the acts were dishonest within the meaning of the bond, the question was one for the jury. The *Home Indemnity* court found that since the acts of the insured's employees in selling unregistered stock were "detrimental to the firm, disregarded its best interests and subjected it to heavy losses," the insurer was liable for the loss. *Home Indemnity Co. v. Reynolds & Co.* (1962), 38 Ill. App. 2d 358, 375-76; see *Reserve Insurance Co. v. General Insurance Co. of America* (1979), 77 Ill. App. 3d 272, 395 N.E.2d 933.

Rosenthal argues that the fraudulent conduct with which its salesmen were charged in the customer claims arising in 1975 and 1976 is within the bonds' definition of dishonesty. Their alleged acts were not executed in furtherance of Rosenthal's best interest and exposed Rosenthal to substantial losses. Rosenthal contends that in granting the motion for summary judgment the trial court overlooked the substance of the misconduct with which Rosenthal's employees were charged and accepted INA's argument that the employees were merely overzealous in their pursuit of business.

INA does not contest the applicability of *Home Indemnity*.

Rather, INA argues that Rosenthal failed as a matter of law to comply with the conditions precedent to recovery under the bonds. The bonds provide that "the insured shall give to the Underwriter written notice of any loss hereunder as soon as possible after the insured shall learn of such loss." The bond also requires that the insured file a verified proof of loss within 90 days.

INA argues that although Rosenthal discovered some of the alleged dishonesty losses during 1975 and 1976, no written notice of any losses under the bond was given to INA until April 3, 1978. INA asserts that if for the purpose of argument it is assumed that all losses discovered during the period of the original bond were discovered on the day before the amendment became effective, then there is, at the very least, a 15-month delay between the discovery of the customer claims and the delivery of written notice to INA. Discovery of losses suffered by customers occurs, INA contends, when the customer makes a demand for or claims a right of recovery against the employer. (*Aetna Casualty & Surety Co. v. Guarantee Bank & Trust Co.* (1st Cir. 1966), 370 F.2d 276, 280.) INA argues that timely notice is essential to protect the rights of the surety both with respect to investigating individual claims and with respect to avoiding future losses from company-wide fraud by inducing corrective action or cancelling the bond. INA notes that in fidelity coverage, the bond terminates immediately as to any future dishonesty by the involved employee after his dishonesty is discovered. The bond also provides the insurer with a right of cancellation of the entire bond on 15 days' notice.

INA cites a number of cases which have held that failure to give notice of a loss to an insurer for a certain length of time constituted as a matter of law failure to give notice as soon as possible under the bond. (*American Stevedores, Inc. v. Sun Insurance Office, Ltd.* (1964), 142 Misc. 2d 516, 248 N.Y.S.2d 487, aff'd (1965), 260 N.Y.S.2d 427 (six months); *Muncie Banking Co. v. American Surety Co.* (7th Cir. 1952), 200 F.2d 115 (nine months); *State Bank of Viroqua v. Capital Indemnity Corp.* (1974), 61 Wis. 2d 699, 703-04, 214 N.W.2d 42, 44 (15 months).

Rosenthal raises two arguments in defense of its failure to give prompt notice. First, Rosenthal challenges INA's statement that it was not provided with written notice before April 1978. Rosenthal asserts that in 1976 Rosenthal gave INA a copy of the CFTC complaint. The CFTC complaint contained affidavits of several customers who filed claims and references to reparations claims filed by customers. Rosenthal contends that this constituted written notice to INA of the

customer claims mentioned in the CFTC complaint.

Secondly, Rosenthal contends that the question whether Rosenthal provided timely notice of the claims being asserted against it is a material issue of fact on which the court may not grant summary judgment. Rosenthal asserts that decisions of this State have held that the issue of reasonable notice is a jury question. *Simmon v. Iowa Mutual Casualty Co.* (1954), 3 Ill. 2d 318, 121 N.E.2d 509; *Higgins v. Midland Casualty Co.* (1917), 281 Ill. 431, 118 N.E. 11; *Sowinski v. Ramey* (1976), 36 Ill. App. 3d 690, 344 N.E.2d 635.

We note that several Illinois cases have decided the issue of timely notice to an insurer on a motion for summary judgment. In *INA Insurance Co. v. City of Chicago* (1978), 62 Ill. App. 3d 80, 379 N.E.2d 34, the court held that where the facts are undisputed the determination of whether the insured used due diligence in giving the insurer notice of accidents is a question of law which may be decided on summary judgment. Also, in *Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co.* (1979), 70 Ill. App. 3d 296, 388 N.E.2d 253, the court affirmed entry of summary judgment on the issue of reasonable notice where the record disclosed lack of due diligence on the part of the insured and no excuse was offered for the delay in giving notice. See also *Country Mutual Casualty Co. v. Van Duzen* (1953), 351 Ill. App. 112, 113 N.E.2d 852.

In the present case, however, material facts are in dispute concerning where the various customer claims were discovered by Rosenthal, when notice of such claims was given to INA and whether delivery of the CFTC complaint constituted written notice of the customer claims therein mentioned. A motion for summary judgment may be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. (*Coomer v. Chicago & North Western Transportation Co.* (1980), 91 Ill. App. 3d 17, 415 N.E.2d 865.) If a genuine issue of material fact exists, a motion for summary judgment should not be granted. (*Manahan v. Daily News-Tribune* (1977), 50 Ill. App. 3d 9, 365 N.E.2d 1045.) Furthermore, the right of the moving party to summary judgment must be clear and free from doubt. (*Manahan.*) We find that the court erred in awarding summary judgment on the claims discovered before the amendment to the bonds became effective. Under the authority of *Home Indemnity*, the losses suffered as a result of Rosenthal's dishonest employees are covered by the bond. The parties, however, have raised a number of factual disputes concerning Rosenthal's compliance with the conditions precedent to recovery. Accordingly, the entry of summary judgment on the claims discovered before January 8, 1977,

is vacated and the cause remanded for trial.

With respect to the claims discovered after January 8, 1977, Rosenthal contends that the trial court erred in accepting INA's argument that the amendment limited the coverage of the bonds. The amendment provided:

"Dishonest or fraudulent acts as used in this Insuring Agreement shall mean only dishonest or fraudulent acts committed by such Employee with the manifest intent:

(a) to cause the Insured to sustain such loss; and

(b) to obtain financial benefit for the Employee, or for any other person or organization intended by the Employee to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment."

Rosenthal argues that it was not informed that the amendment limited the coverage provided by the fidelity bond. Rosenthal contends that the claims made by its customers were exactly the type for which brokers' blanket bonds are intended to provide protection and to permit an amendment to the bonds which restricts coverage of these claims renders illusory the insurance coverage purchased from INA. Further, the insured argues that since the premium was tied to the risk insured and the premium was not reduced when the amendment was signed, the coverage of the bonds was not altered by the amendment.

INA argues that the amendment was part of an industry-wide response to the confusion created by the undefined dishonesty terms in bonds such as the bond at issue in *Home Indemnity*. INA asserts that by the plain language of the amendment there must be proof of a manifest intent first to harm the employer and second to obtain financial benefit for the employee other than the benefits earned in the normal course of employment such as commissions. INA also points out that it is presumed that a policyholder has read the policy he signs. *Pollock v. Connecticut Fire Insurance Co.* (1935), 362 Ill. 313, 199 N.E. 816.

In support of its motion for summary judgment, INA presented the deposition of Rosenthal's compliance officer who had investigated the customer claims. The compliance officer stated that the salesmen did not gain anything except a commission from the unauthorized trading alleged in the customer complaints. INA argues that this testimony left no issue of material fact regarding whether the customer claims discovered after January 1977 were covered by the bond's in-

demnity provisions.

Rosenthal has not cited any authority for its position that the amendment should not be given effect. We note that Rosenthal has represented in its brief that it is an experienced and sophisticated commodity broker. Rosenthal has not argued that it did not understand the plain meaning of the amendment at the time the amendment was executed. The terms of the amendment are unambiguous and must be given effect as written. (*Sowinski v. Ramey* (1976), 36 Ill. App. 3d 690, 344 N.E.2d 635.) The trial court did not err in entering summary judgment for INA with respect to customer claims discovered after the amendment was signed.

Rosenthal next argues that it is entitled to reimbursement for attorney fees and court costs spent in defending itself against the CFTC's claim for disgorgement. Rosenthal contends that INA's obligation arose whether or not Rosenthal's defense was successful. Further, Rosenthal contends that INA is not relieved of liability by the exclusionary clause of the bonds that excludes from coverage those losses suffered by Rosenthal which are attributable to acts of its "managing body." The parties agree that the bonds do not provide indemnity for losses caused by Rosenthal's partners. Rosenthal, however, asserts that the CFTC action sought to hold the partners liable for the dishonesty of their salesmen under the doctrine of *respondeat superior*.

INA contends that the CFTC complaint accused the Rosenthal partners of orchestrating a nationwide, fraudulent, high pressure sales campaign for London options. INA argues that since the CFTC complaint specifically charged the partners with directing and causing the dishonest activity of the salesmen, fees expended in the defense of the CFTC action are not within the bonds' coverage. We agree.

The CFTC complaint, which is a part of the record, clearly alleges that the partners instructed salesmen to provide only minimal information to customers; that the partners failed to disclose to customers that the company purchased options in the London markets in the company's name rather than in the customer's name; and, that the partners misrepresented the company's pricing policy for London options and billed customers for a "foreign service fee" which was allegedly only an additional concealed commission charge. The CFTC complaint does not set forth allegations that bring the claim within, or potentially within, the risks covered by the bonds. See *La Rotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 408 N.E.2d 928.

The cases relied upon by Rosenthal involve indemnification for at-

torney fees spent in defending a claim which if proven would have been covered by the fidelity bond at issue there. (*H.S. Equities, Inc. v. Hartford Accident & Indemnity Co.* (S.D.N.Y. 1978), 464 F. Supp. 83, 87; *First National Bank v. Fidelity & Casualty Co.* (5th Cir. 1981), 634 F.2d 1000, 1003.) The fidelity bond in the case at bar provides indemnification for attorney fees only in the defense of claims brought against the insured "with respect to which the insured establishes that the act or acts which occurred would entitle the Insured to recovery under this bond *** if any loss resulted therefrom." Although a party against whom a motion for summary judgment has been filed need not prove his case at this preliminary stage, he is required to present some factual basis that would arguably entitle him to a judgment under the applicable law. (*Martin v. American Legion Post No. 784* (1978), 66 Ill. App. 3d 116, 383 N.E.2d 672.) The CFTC complaint is the only evidence in the record on what acts are alleged to have occurred. Since the allegations of the complaint, if proven, would have found Rosenthal's partners responsible for causing the dishonest activities of the employees, Rosenthal is not entitled to indemnity under the bonds for fees spent in defending its partners. The trial court did not err in entering summary judgment for INA on this issue.

On cross-appeal, INA contends that the trial court erred in entering judgment in Rosenthal's favor on the claim of Marie Auditore. Auditore filed suit in 1976 alleging that Rosenthal salesmen had stolen money she deposited with Rosenthal. Auditore sought $44,488 plus exemplary damages. The Federal district court entered judgment in her favor of $51,000. Rosenthal appealed and was granted a retrial. On retrial the court awarded Auditore $66,099. In the court below Rosenthal requested a declaratory judgment finding that INA must indemnify Rosenthal for the amount of the second judgment and for attorney fees spent in defending the claim. The circuit court awarded Rosenthal $50,000 plus attorney fees of $73,000.

INA first contends that the Auditore claim, although alleging employee dishonesty within the coverage of the bonds, is not covered because Rosenthal failed to give INA timely notice of the claim. INA argues that Auditore filed her claim in December 1976 but Rosenthal did not provide written notice of the claim until April 1978. Rosenthal contends that the trial court properly granted summary judgment on the Auditore loss in light of INA's admission that the claim was covered. During discovery Rosenthal obtained a memorandum written by INA's claim manager. The memorandum stated in regard to the Auditore claim, "it is our opinion that the loss is covered."

Generally, any statement made by a party or in his behalf which is inconsistent to his position in litigation may be introduced into evidence against him. (*Quincy Trading Post, Inc. v. Department of Revenue* (1973), 12 Ill. App. 3d 725, 298 N.E.2d 789; *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769.) Under the facts of this case, the trial court did not err in finding INA liable for the Auditore claim.

INA further contends that the trial court erred in granting Rosenthal an award in excess of the bonds, $50,000 liability limit per occurrence. The bonds provide that indemnity for court costs and attorney fees shall be "a part of and not in addition to the amount of this bond ***." Rosenthal argues that its recovery is not limited by the amount of coverage provided by the bonds in this instance because INA acted in such bad faith in refusing to cooperate with Rosenthal while internally acknowledging that the loss was covered. Affidavits filed by Rosenthal assert that prior to the Auditore trial Rosenthal discussed the claim with INA and gave INA access to its files on the claim, yet INA neither acknowledged nor denied that the claim was covered. Also, Rosenthal told INA that Auditore would probably accept a settlement before trial in a figure within the bonds' limits, yet INA refused to take part in settlement negotiations and did not even answer Rosenthal's letters during crucial periods of the case.

In support of its position, Rosenthal cites several cases in which courts have held that where an insurer in bad faith refuses to settle a lawsuit against its insured, the insurer exposes itself to liability under the insurance policy without regard to the policy's limits. (*Olympia Fields Country Club v. Bankers Indemnity Insurance Co.* (1945), 325 Ill. App. 649, 60 N.E.2d 896; *Wolfberg v. Prudence Mutual Casualty Co.* (1968), 98 Ill. App. 2d 190, 195, 240 N.E.2d 175, 178.) INA asserts, however, that these cases are inapposite because they arose under liability policies containing duty to defend clauses and not, as in the present case, under an indemnity policy. We agree.

Rosenthal has conceded that the fidelity bonds do not obligate INA to defend or to settle the claims against its insured. Rosenthal has not shown us how INA breached its contract. INA's failure to cooperate with Rosenthal's defense of the claim under the circumstances did not expose INA to liability in excess of its policy limits.

For the foregoing reasons, the award of $50,000 to Rosenthal on the claim of Marie Auditore is affirmed. The award of $73,111.79 for attorney fees on the Auditore claim is reversed. The denial of attorney fees for the defense of the CFTC action is affirmed. The denial of coverage under the bonds for claims discovered by Rosenthal after

the effective date of the January 8, 1977, amendment is affirmed. The denial of coverage to claims discovered prior to the effective date of the amendment is vacated and remanded.

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

BUCKLEY, P.J., and GOLDBERG, J., concur.