**BENCHMARK CRAFTERS, INC. d.b.a. Princess Toys, Respondent,**

v.

**NORTHWESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE, Appellant.**

**No. C4–84–1614.**

Court of Appeals of Minnesota.

Feb. 19, 1985.

Review Denied May 1, 1985.

Richard F. Rosow, Minneapolis, for appellant.

Robert W. Gislason, Minneapolis, for respondent.

Heard, considered and decided by SEDGWICK, P.J., and FOLEY and CRIPPEN, JJ.

## OPINION

SEDGWICK, Judge.

Plaintiff-respondent Princess Toys, a toy manufacturer insured by defendant-appellant Northwestern National Insurance Company of Milwaukee, a fidelity bonding company, brought an action against the bonding company seeking indemnity under a commercial blanket bond for losses it sustained as the result of fraudulent and dishonest acts by its former sales manager.

The trial court found that Princess Toys sustained losses in excess of $60,000. It ordered judgment for the manufacturer in the amount of the bond ($25,000) with interest from November 1981, the date the proof of loss was submitted to the insurance company, and taxable costs and disbursements. Appellant claims the evidence is not sufficient to support the verdict. We agree and reverse.

### FACTS

Respondent, Benchmark Crafters, d/b/a Princess Toys, manufactures and sells plush stuffed animal toys. In 1978 it purchased fidelity bond insurance from appellant Northwestern National Insurance Company of Milwaukee. The insurance contract provided coverage up to $25,000 for any loss to respondent directly resulting from the fraudulent or dishonest acts of an employee. The contract defines dishonest and fraudulent acts as:

> only dishonest and fraudulent acts committed by such Employee with the manifest intent:
>
> (a) To cause the Insured to sustain such a loss; and
>
> (b) To obtain financial benefit for the Employee, or for any other person or organization intended by the Employee to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment.

The contract also contains an exclusion for "potential income, including but not limited to interest and dividends, not realized by the insured because of a loss covered under the Bond."

In May 1981, respondent hired Timothy Mohr as its national marketing and sales manager. His job involved working with sales representatives throughout the country, attending trade shows, and soliciting new business from large retail operations.

He worked for respondent approximately 4 months before the company discovered that Mohr had submitted $341,844 worth of false orders from five different accounts for respondent's new line of infant toys. The projected sales for this line of toys was estimated between $25,000 to $40,000 for the first year. Mohr also ordered $8,500 worth of display racks to be used in retail stores for the infant toys. Upon being confronted with these orders, Mohr resigned.

Respondent filed a proof of loss statement within the time required under the contract. Respondent claimed the following losses:

| | |
|---|---|
| Unauthorized use of Company's American Express credit card | $10,518 |
| Special Display Racks | $8,554 |
| Unrecoverable Losses from False Orders In excess of | $14,739 |
| Policy Limit | $25,000 |
| | |
| Total Claim | $25,000 |

At trial respondent's accountant testified that the unrecoverable losses from the false orders projected to be $14,739 in its claim turned out to be $44,000. Thus, the company's total loss was approximately $62,000.

Respondent presented no evidence that Mohr submitted the false orders, ordered the special racks and misused the company credit card with the intent to harm the company. There is no clear evidence that Mohr used the company credit card for other than business purposes. The manufacturer only presented evidence of losses incurred as a result of the false orders. It also failed to prove, as required by the contract, that Mohr financially benefited from his actions by means other than his salaries, commissions, fees, bonuses, promotions, awards, etc.

## ISSUES

1. Are the findings of the trial court supported by the evidence?

2. Is this appeal brought in bad faith?

## ANALYSIS

■ In an action on a fidelity bond executed to indemnify employer against loss caused by dishonesty or fraud of an employee, the employer has the burden of proving by a reasonable preponderance of the evidence that the loss was caused by the dishonest or fraudulent acts of the employee within the terms of the fidelity bond. *Village of Plummer v. Anchor Casualty Co.*, 240 Minn. 355, 61 N.W.2d 225 (Minn.1953).

■ The plain language of the insurance contract requires that there must be proof of a manifest intent first to harm the employer and second to obtain financial benefit for the employee other than the benefits earned in the normal course of employment.

It is uncontroverted that Mohr did not gain anything except his regular salary and expenses from the fraudulent acts. Respondent argues that Mohr's 4 months of employment before the fraud was discovered is the financial benefit to Mohr which satisfies the second element. However, the terms of the insurance contract clearly exclude this argument.

The court in *Mortell v. Insurance Company of North America*, 120 Ill.App.3d 1016, 76 Ill.Dec. 268, 458 N.E.2d 922 (Ill. App.Ct.1983), dealing with an identical insurance provision, held the terms were unambiguous and must be given effect as written.

Since respondent failed to prove the second element of the two elements of proof necessary to recover against the insurance

company, the trial court erred in finding respondent met its burden of proof.

In light of this, it is not necessary to discuss whether respondent met its burden of proof on the intent to harm element.

2. There is no merit to respondent's argument that this appeal was brought in bad faith.

## DECISION

There is no evidence that respondent met his burden of proof required under the insurance contract. Since the contract is unambiguous, it must be given effect. We reverse.