**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF SALT LAKE CITY, Plaintiff–Appellant,**

v.

**TRANSAMERICA INSURANCE COMPANY, a California corporation, and John Clark, Defendants–Appellees.**

No. 90–4015.

United States Court of Appeals, Tenth Circuit.

June 13, 1991.

John W. Lowe, Salt Lake City, Utah, for plaintiff-appellant.

Patrick S. Hendrickson (Clark B. Fetzer of Howell & Fetzer with him on the brief),

Salt Lake City, Utah, for defendants-appellees.

Before BALDOCK, BRORBY, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

First Federal Savings & Loan Association of Salt Lake City (hereinafter "First Federal") had in force and effect a Financial Institution Bond issued it by Transamerica Insurance Company, a California corporation (hereinafter "Transamerica"). The bond provided that Transamerica would pay First Federal for any loss sustained by it "resulting directly from dishonest or fraudulent acts of an Employee committed alone or in collusion with others."

John Clark, a loan officer in First Federal's loan office, participated in three residential property loans which eventually ended in default. First Federal's foreclosure and resale of each of these three properties resulted in deficiencies wherein First Federal sustained losses. First Federal made claim against Transamerica for recovery under the fidelity bond issued it by Transamerica for the losses thus incurred. Transamerica denied the claim on the ground that Clark's actions were not "dishonest or fraudulent" as defined in the policy.

First Federal then brought suit in a state court in Utah against Transamerica and Clark. Transamerica removed the case to the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1441(b). The district court's jurisdiction was based on diversity of citizenship.[1]

After discovery, First Federal and Transamerica filed cross-motions for summary judgment, First Federal contending that as a matter of law its losses were covered by the bond, and Transamerica contending that as a matter of law, under the Bond's definition of "dishonest and fraudulent acts," First Federal's losses were not covered. The district court denied First Federal's motion, granted Transamerica's motion, entered judgment dismissing First Federal's action against Transamerica, and certified that it was a final judgment under Fed.R.Civ.P. 54(b). First Federal appeals. We affirm.

■ The pertinent language in the bond issued First Federal by Transamerica insures the former for "loss" as follows:

Loss resulting directly from dishonest or fraudulent acts of an Employee committed alone or in collusion with others.

Dishonest or fraudulent acts as used in this Insuring Agreement shall mean only dishonest or fraudulent acts committed by such Employee with the manifest intent

(a) to cause the Insured to sustain such loss, and

(b) to obtain financial benefit for the Employee or for any other person or organization intended by the Employee to receive such benefit, other than salaries, compensations, fees, bonuses, promotions, awards, profit sharing, pensions or other Employee benefits earned in the normal course of employment.

The parties are in substantial agreement as to John Clark's "acts," but differ as to whether those "acts" are within the policy's definition of "dishonest or fraudulent acts."

As indicated, the facts of the case arise out of three residential loan transactions wherein Clark, acting for First Federal, participated to varying degrees. The first loan is referred to as the Webster–Zdunich loan, which involved certain residential property known as the Walden Park Drive property in Salt Lake City, Utah. Mark and Angela Zdunich applied for a loan to purchase the Walden Park Drive property from Barney and Marva Webster. Clark, on behalf of First Federal, rejected the Zduniches' loan application on May 21, 1984, apparently because their "income [was] not sufficient to service [the] debt." Approximately two months later, Barney and Marva Webster applied for a loan on the Walden Park Drive property, pledging

---

1. First Federal is a citizen and resident of Utah. Transamerica is a citizen and resident of California. Clark is a citizen and resident of Idaho. We are not here concerned with Clark.

the same property as security. Clark and another First Federal loan officer approved the Webster loan on July 26, 1984, without the approval of the loan committee, as was apparently required by First Federal's "company rules." On September 18, 1984, the Zduniches and First Federal entered into an assumption agreement whereby the Zduniches assumed the Webster loan on the Walden Park Drive property beginning October 1, 1984. The Websters were accordingly released from the loan obligation and the Zduniches later defaulted. The property was foreclosed May 9, 1988, and First Federal sold the property at a loss and now seeks recovery from Transamerica for its loss.

The second loan here involved is the so-called Simpkins–Sass loan. Clark, acting for First Federal, rejected a loan application by Michael and Erica Sass on certain property referred to as the Maryland Condominium property in Salt Lake City, Utah, partially because of their credit rating. Clark also rejected a loan application by Robert and Faye Simpkins on other property referred to as the Sunflower Condominium property in St. George, Utah, because their "income [was] not sufficient to service [the] debt." Approximately one month later, Clark arranged for a loan to both the Simpkins and the Sasses on the Sunflower Condominium realty in St. George, Utah, again without the approval of the loan committee. The Sasses eventually conveyed their interest in this property to the Simpkins on April 2, 1986. This loan also eventually resulted in a default, and First Federal seeks recovery from Transamerica for its loss sustained in the foreclosure and resale.

The third loan here involved is referred to as the Evans–Carper loan and concerns property referred to as the Commanche Drive property in Salt Lake City, Utah.

Clark rejected a loan application by Jackie and Carol Carper for a loan to purchase the Commanche Drive property because of their poor credit rating. Approximately seven days later, Clark arranged for a loan to one Steve Evans who purchased the Commanche Drive property and then gave that property as security for the loan. Evans' loan application was also not submitted for approval to the loan committee. After the loan was made, the Carpers assumed the loan and Evans was released from the loan obligation. Thereafter, the Carpers defaulted on the loan and First Federal foreclosed and sold the property at a loss. Clark received $2,000 of the "origination fee" and used part of that sum to pay rental on his home. Later, Clark returned this $2,000 to First Federal. In its brief, First Federal agrees that it "is not claiming a loss on the $2,000," since, having been repaid, it has in fact suffered no loss.

Under the policy terms, First Federal is insured against "[l]oss resulting directly from dishonest or fraudulent acts of an Employee committed alone or in collusion with others."[2] The policy goes on to provide that "[d]ishonest or fraudulent acts" by an employee means only that such employee had a "manifest intent": (1) to cause a loss to the insured *and* (2) to obtain financial benefit for himself or for another whom the employee intended to benefit. The policy excludes from the term "benefit" such things as salary, fees, bonuses, and the like, earned by the employee in the normal course of his employment.

■ We fail to see that First Federal has shown that it has met either of the two requirements set forth in the policy. There is nothing to indicate that at the time of these three transactions Clark had a "manifest intent"[3] to cause First Federal a

2. There is nothing in the record to support any suggestion that Clark was acting "in collusion" with anyone.

3. In defining "manifest," several courts have relied on Webster's Third New International Dictionary (1986), which defines "manifest" as follows: "to show plainly or make palpably evident or certain by showing or displaying...."

See *City of Akron v. Holley,* 53 Ohio Misc.2d 4, 557 N.E.2d 861, 864–65 (1989); *see also State v. Holland Plastics Co.,* 111 Wis.2d 497, 331 N.W.2d 320, 323, n. 6 (1983). Further, in *Hanson PLC v. National Union Fire Insur.,* 58 Wash. App. 561, 794 P.2d 66 (1990), a case involving a fidelity bond with language similar to that contained in the bond in question, the Washington Court of Appeals stated that "[a] secret intent is

"loss." At the most, the record simply shows that Clark, when an initial application for a loan was turned down, attempted to arrange a transaction that would hopefully be to the mutual benefit of First Federal and the borrower. And the fact, if it be a fact, that Clark in so doing may have used poor business judgment in making these loans does not meet the first requirement of the policy.

Further, there is nothing in the record to suggest that in making these loans Clark had a "manifest intent" to obtain financial benefit for himself or others whom Clark intended to benefit. As indicated, the $2,000 which Clark received as an "origination fee" in the Evans–Carper transaction was returned and First Federal agrees that, the $2,000 having been repaid, it has not suffered any loss on account of such origination fee.[4] Counsel has offered no authority for the suggestion that it was the borrowers whom Clark intended to benefit, and that such satisfied the second requirement of the policy definition of "dishonest or fraudulent acts." In this connection, we note that there is nothing to indicate that at the time of the transactions in question, Clark had the manifest intent to benefit any of the borrowers.

Our attention has not been directed to any Utah case with facts resembling the facts in the instant case. However, a case quite close to the instant one is *Mortell v. Insurance Co. of N. Am.*, 120 Ill.App.3d 1016, 76 Ill.Dec. 268, 458 N.E.2d 922 (1983). There the policy of insurance contained an identical definition of "dishonest or fraudulent acts" as the policy here involved. In *Mortell* the court agreed with the insurer that under the policy definition, in order for the insured (the employer) to prevail, he had to present proof of a manifest intent on the part of his employees, first to cause him to sustain a loss, and second, to obtain financial benefit for themselves or for others intended by the employees to receive such a benefit. First Federal has failed to

meet either of these requirements in its policy with Transamerica. Absent a genuine issue of material fact, the district court correctly found that "the language in the [bond] pertaining to dishonest or fraudulent acts ... as a matter of law does not extend to the losses claimed by [First Federal]."

Judgment affirmed.

---

4. of no consequence. This is consistent with the language of the policy requiring a manifest intent, as the word 'manifest' means apparent or obvious." 794 P.2d at 72.

**4.** Transamerica agrees that if Clark had not returned the $2,000, First Federal would have had a valid claim under its policy with Transamerica for $2,000.