**AUBURN FORD LINCOLN MERCURY, INC., Plaintiff,**

v.

**UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Defendant.**

**Civil Action No. 96–D–839–E.**

United States District Court, M.D. Alabama, Eastern Division.

Jan. 8, 1997.

H. Dean Mooty, Jr., Montgomery, AL, for Plaintiff.

L. Graves Stiff, III, Sharon A. Woodard, Birmingham, AL, for Defendant.

## MEMORANDUM OPINION

DE MENT, District Judge.

This matter is now before the court on Defendant Universal Underwriters Insurance Company's ("Universal") motion for summary judgment and brief in support filed on November 25, 1996. Plaintiff, Auburn Ford Lincoln Mercury, Inc. ("Auburn"), re-sponded in opposition to Universal's motion on December 11, 1996, and Universal filed a reply to this response on December 23, 1996.

After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds that Universal's motion for summary judgment is due to be granted.

### JURISDICTION

Based upon 28 U.S.C. § 1332, the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue.

### STATEMENT OF FACTS

From August 1991 until January 1994 Harry Kearse ("Kearse") served as the fleet manager for Auburn, a Ford Motor Company ("Ford") dealership incorporated in Delaware with its sole place of business-in Auburn, Alabama. As part of his duties, Mr. Kearse administered the Fleet Sales Program ("FSP") which provides Government Price Concessions ("GPC") to qualifying government agencies and corporations. A GPC reduces a potential buyer's sale price which provides qualifying entities a more attractive purchase price. For a limited time, the GPC program was expanded to include qualifying individuals who worked for a governmental entity and were required to use their automobile in their official duties.

The use of a GPC required Ford's approval. Such approval was gained by entering a buyer's information into a specialized computer program. Based upon a review of this information, Ford either approved the use of the GPC or questioned its validity and denoted the GPC as a potential chargeback. Chargebacks are commonly employed by Ford to question non-covered warranty claims and improper or incomplete information concerning transactions involving the financial interests of Ford. Once a potential chargeback is listed on a dealer's payment statement, the dealer and Ford work to resolve the discrepancies.

Kearse allegedly improperly entered several incorrect state codes while applying for GPCs, allowing Kearse to offer prospective

customers lower prices. Kearse also allegedly sold GPC vehicles to individuals who were not authorized to purchase such vehicles. As a result of these allegedly improper GPC transactions, substantial chargebacks appeared on Auburn's Ford statements. These large chargebacks triggered an audit in July 1994 which resulted in the release of a "Summary of Marketing Audit Findings" on October 7, 1994. The October 7th finding stated that Auburn had "submitted to [Ford] false or fraudulent claims for misreporting government price concession (GPS) sales."

Auburn then turned to its insurer to cover the losses resulting from these chargebacks. While the then current insurer allegedly paid its portion of the chargebacks, the insurer at the time of Kearse's alleged improper dealings, Universal, refused to pay any of the claimed amounts under the terms of the policy issued to Auburn ("Policy"). According to a May 8, 1996, letter, Universal based its denial, in part, upon Auburn's failure to discover Kearse's allegedly dishonest actions within one year of the end of the policy period and also on an exclusion which limits recovery for employee dishonesty to situations in which the employee receives a benefit other than "salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions, and other EMPLOYEE benefits earned in the normal course of employment." In its summary judgment motion, Universal also contends that Kearse lacked the requisite "dishonesty" or "manifest intent." Auburn filed the current action on April 23, 1996, asking the court to find that Universal breached its contract by not paying Auburn's claim under the Policy's dishonest employee rider.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2509–10; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11.

## DISCUSSION

Universal contends that Auburn's claim is clearly excluded by the clear language of the Policy which states:

> EMPLOYEE DISHONESTY—WE will pay for LOSS of MONEY, SECURITIES, and other property which YOU sustain-resulting directly from any fraudulent or dishonest act committed by an EMPLOYEE with manifest intent to:
>
> (a) cause YOU to sustain such a LOSS and;
>
> (b) obtain financial benefit for the EMPLOYEE, or any other person or organization intended by the EMPLOYEE to receive such benefit other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions, and other EMPLOYEE benefits earned in the normal course of employment.

Universal contends that Auburn's loss is not covered because Kearse's allegedly improper actions only netted increased commissions. According to Universal, if an insured's employee dishonestly increases his or her commissions, the insured's loss is excluded by the clear language of the insurance policy. Auburn argues that to construe the Policy in this way would subvert the intent of the policy. Auburn also attempts to distinguish the case law supporting Universal's interpretation of the exclusion.

Under Alabama law, the insurer bears the burden of "proving the applicability of any policy exclusion." *Guaranty Nat'l Ins. Co. v. Beeline Stores, Inc.*, 945 F.Supp. 1510, 1513–14 (M.D.Ala.1996) (Thompson, C.J.) (citing *U.S. Fidelity & Guar. Co. v. Armstrong*, 479 So.2d 1164, 1168 (Ala.1985)). When dealing with ambiguous policies, a court must construe the policy "liberally in favor of the insured, and exceptions must be interpreted as narrowly as possible in order to provide maximum coverage to the insured." *Id.* (citing *Altiere v. Blue Cross & Blue Shield*, 551 So.2d 290, 292 (Ala.1989)). However, if the policy language is clear, the court must enforce the policy as written and the court "should not defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties." *Id.* (citing *Altiere*, 551 So.2d at 292).

■ The Policy clearly states that it will pay where the dishonest employee act causes a loss to the insured and the employee receives "such benefit other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions, and other EMPLOYEE benefits earned in the normal course of employment."[1] Kearse's allegedly dishonest acts served only to increase his commissions. Auburn has not alleged that Kearse's allegedly dishonest acts resulted in anything other than increased commissions. Several courts have agreed with Universal's position and found that an employee's dishonest act is excluded under similar policies when the employee receives one of the listed benefits. *See Municipal Securities, Inc. v. Insurance Co. of North America*, 829 F.2d 7, 9–10 (6th Cir.1987) (holding that when the employee's acts led to increased commissions the policy "explicitly excluded" coverage); *Hartford Accident and Indem. Ins. Co. v. Washington Nat'l Ins. Co.*, 638 F.Supp. 78, 83–84 (N.D.Ill.1986)("[A]ll courts to speak on the matter have found the industry-wide definition of 'dishonest and fraudulent acts' to be unambiguous; that definition excludes recovery for losses resulting from an employee's intent to obtain a financial benefit for himself from commissions."); *see also Mortell v. Insurance Co. of North America*, 120 Ill.App.3d

---

1. The court finds that the clear language of the Policy invalidates the Plaintiffs' intent argument.

1016, 76 Ill.Dec. 268, 275–76, 458 N.E.2d 922, 929–30 (Ill.App.Ct.1983) (holding no liability under the policy where evidence showed that dishonest employee did not gain any benefit except commission); *Benchmark Crafters, Inc. v. Northwestern Nat'l Ins. Co.,* 363 N.W.2d 89, 91 (Minn.Ct.App.1985)(holding that employee acts were excluded where employee obtained nothing but "regular salary and expenses" from the dishonest acts).

■ Auburn argues that these decisions are inapplicable because Kearse would not have received the additional commissions "in the normal course of his employment." However, the phrase "in the normal course of employment" serves only to define the type of excluded benefits. *Hartford Accident,* 638 F.Supp. at 83–84 ("[U]nearned salaries and commissions are nevertheless still salaries and commissions and therefore belong to the generic category of employee benefits that are normally earned in the course of employment."). This phrase does not mean that allegedly dishonestly obtained commissions are included within the policy. Therefore, Kearse's unearned commissions are excluded by the terms of the Policy. Because Kearse sought an excluded benefit, Universal is not liable to Auburn for the damages resulting from Kearse's allegedly dishonest actions and Universal's motion for summary judgment is due to be granted.

### *CONCLUSION*

Accordingly, it CONSIDERED that the defendants' motion for summary judgment be and the same is hereby GRANTED. A judgment in accordance with this memorandum opinion will be entered separately.