This is a declaratory-judgment action involving the interpretation of an insurance policy. The defendant, Cincinnati Insurance Company (hereinafter "Cincinnati"), appeals from a summary judgment entered for the plaintiff, Tuscaloosa County Parking and Transit Authority (hereinafter "the Authority"). We affirm.
The Authority is a public organization created by the Legislature to receive federal funding for operating a public transportation agency in Tuscaloosa. The Authority is governed by a board of directors (hereinafter "the Board"), the members of *Page 766 
which serve on a volunteer basis. From 1994 through 1997, Cecil Rhodes and Jackie Headley were employed by the Authority as the executive director and assistant director, respectively. Over the four years they were employed by the Authority, they, through different schemes, embezzled funds totaling over $300,000.
In one of these schemes, Rhodes and Headley received funds by issuing payroll checks in excess of their salaries. Although the payroll checks were co-signed by a member of the Board, the Board member who co-signed was unaware that the checks exceeded the proper amount. The receipt of unauthorized funds went undetected by the Board because the Board, at its monthly meetings, was provided with agenda packets and monthly budget reports, prepared by Headley and Rhodes, which disguised the embezzlement. However, Rhodes and Headley's embezzlement of funds from the Authority was ultimately discovered when the Board was replaced and the new board members hired an outside accounting firm to conduct an audit of the Authority. That audit revealed that while the salaries set by the Board for Rhodes and Headley for the year 1997 totaled $125,000, the actual sums they had received as salaries for that year totaled $172,251.
The audit was expanded, and it ultimately showed that from 1994 to 1997, Rhodes had received payments from the Authority designated as salary that exceeded his salary by $109,824.84, and Headley had received payments that exceeded her salary by $95,653.44. In addition to embezzling funds by writing themselves checks in excess of their salaries, Rhodes and Headley had used the Authority's credit cards for personal use, had received "kickbacks" from fraudulent invoices paid by the Authority, and had received personal cleaning services at their homes paid for with the Authority's funds. Rhodes and Headley were fired in January 1998, and both were subsequently convicted in the United States District Court for the Northern District of Alabama of embezzlement.
During the time Rhodes and Headley were employed by the Authority and embezzling funds from it, the Authority was insured under a fidelity insurance policy issued by Cincinnati; that policy provided coverage for losses resulting from employee dishonesty. The provision of the insurance policy at issue includes the following definitions concerning coverage:
"A. COVERAGE
 "We will pay for loss of, and loss from damage to, Covered Property resulting directly from the Covered Cause of Loss.
 "1. Covered Property: `Money,' `securities,' and `property other than money and securities.'
"2. Covered Cause of Loss: `Employee dishonesty.'
". . . .
"3. Additional Definitions
". . . .
 "b. `Employee Dishonesty' in paragraph A.2 means only dishonest acts committed by an identified `employee' acting alone or in collusion with other persons, except you or a partner, with the manifest intent to:
"(1) Cause you to sustain loss; and also
 "(2) Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:
"(a) the `employee'; or *Page 767 
 "(b) Any person or organization intended by the `employee' to receive that benefit."
(Emphasis added.) Cincinnati paid a portion of the claim for the losses the Authority suffered from Rhodes and Headley's dishonest acts; however, Cincinnati refused to pay those funds the employees received under the guise of salaries, alleging that the provision quoted above excluded from coverage any salaries.
The Authority sued Cincinnati to recover the remaining embezzled funds. Cincinnati answered the complaint and counterclaimed for a judgment declaring that the claim was not covered under the terms of the insurance policy. Both Cincinnati and the Authority filed motions for a summary judgment, accompanied by supporting affidavits and other evidentiary material. The trial court granted the Authority's summary-judgment motion, holding that the loss in the form of sums taken in excess of salaries was covered under the insurance policy, and awarded the Authority $149,544.15.[2] Cincinnati appealed.
Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56, Ala.R.Civ.P. In this case, the facts are undisputed. The only question to be resolved is the interpretation of the insurance contract, which is a question of law. See National Union FireIns. Co. v. City of Leeds, 530 So.2d 205, 207 (Ala. 1988).
We apply the normal rules of construction applicable to insurance policies. See National Union, 530 So.2d at 207. "The provisions of the policy must be construed in light of the interpretation that ordinary [persons] would place on the language used therein." Id.
 "Ambiguities in an insurance policy must be construed liberally in favor of the insured, and exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured. Cotton States Mutual Ins. Co. v. Michalic, 443 So.2d 927
(Ala. 1983), overruled on other grounds, Holt v. State Farm Mutual Automobile Ins. Co., 507 So.2d 388 (Ala. 1986); however, if there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties. Turner v. United States Fidelity Guaranty Co., 440 So.2d 1026 (Ala. 1983)."
Altiere v. Blue Cross Blue Shield of Alabama, 551 So.2d 290, 292
(Ala. 1989).
The language of the provision at issue is not ambiguous. According to the plain terms of the provision, in order for the insured to recover for "employee dishonesty," the employee must commit dishonest acts with the manifest intent to (1) cause the insured to sustain loss, and (2) obtain a financial benefit for the employee or for any person or organization intended by the employee to receive that benefit. However, the phrase "financial benefit" in the provision is qualified by the following language: "other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment." *Page 768 
To determine the interpretation that ordinary persons would place on the word "salaries," we refer to The American Heritage Dictionary (4th ed. 2000), which defines "salary" as "fixed compensation for services paid to a person on a regular basis." According to this definition, the embezzled funds received in the form of payroll checks were not part of either of the employee's "salary" because those funds exceeded the fixed compensation that was to be paid for the services provided. The embezzled funds were not salaries. Cincinnati would have this Court rewrite the provision to include all sums "designated as salaries." This we will not do.
At the end of the list of exclusions, appears: "other employee benefitsearned in the normal course of employment" (emphasis added). The AmericanHeritage Dictionary defines "other" as "being the remaining one of two or more." Therefore, the implication is that the previous items in the list, including "salaries," are "employee benefits earned in the normal course of employment"; that is, the phrase generically describes the kinds of employee benefits previously listed.
"Earn" is defined in The American Heritage Dictionary as "to gain especially for the performance of service, labor, or work." As stated previously, none of the embezzled funds were "earned"; they were "stolen." This clause, as read by an ordinary person, draws the distinction between "employee benefits earned in the normal course of employment," which are not covered by the policy, and things such as embezzlements, kickbacks, payoffs, and general theft, which are covered.
The parties cite cases that are not binding on this Court. Some are consistent with our holding;[3] some are not relevant;[4] and in some, the Court did not consider the plain meaning of the word "salaries."[5]
We hold that the trial judge's interpretation of the policy is correct and that the summary judgment was properly entered in favor of the Authority. Therefore, the judgment is due to be affirmed.
AFFIRMED.
Moore, C.J., and Lyons, Johnstone, and Woodall, JJ., concur.
[2] After the Authority received a refund from the Internal Revenue Service and State Department of Revenue for the overpayments of taxes on the sums in excess of Rhodes and Headley's salaries, it filed a claim with Cincinnati for approximately $258,599. Cincinnati paid approximately $53,120 and denied the remainder of the claim — $205,478. After receiving partial restitution from the former employees following their criminal convictions, the Authority reduced its claim to $118,181.77 plus prejudgment interest.
[3] Klyn v. Travelers Indem. Co., 709 N.Y.S.2d 780, 273 A.D.2d 931
(2000) (mem.); Federal Deposit Ins. Corp. v. St. Paul Fire MarineIns. Co., 738 F. Supp. 1146 (M.D.Tenn. 1990), modified on other grounds,942 F.2d 1032 (6th Cir. 1991).
[4] Auburn Ford Lincoln Mercury, Inc. v. Universal Underwriters Ins.Co., 967 F. Supp. 475 (M.D.Ala. 1997); Mortell v. Insurance Co. of NorthAmerica, 120 Ill. App.3d 1016, 458 N.E.2d 922, 76 Ill. Dec. 268 (1983);Municipal Sec. Inc. v. Insurance Co. of North America, 829 F.2d 7 (6th Cir. 1987).
[5] Benchmark Crafters, Inc. v. Northwestern Nat'l Ins. Co.,363 N.W.2d 89 (Minn.Ct.App. 1985); Hartford Accident Indem. Ins.Co. v. Washington Nat'l Ins. Co., 638 F. Supp. 78 (N.D.Ill. 1986);Dickson v. State Farm Lloyds, 944 S.W.2d 666 (Tx.App. 1997).