**UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff,**

v.

**CITIZENS BANK OF TAZEWELL, Defendant.**

**Civ. A. No. 87–0146–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Aug. 8, 1989.

---

**472**

David B. Hart, Roanoke, Va., for plaintiff.

Frederick W. Harman, Tazewell, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

This is a complaint for declaratory judgment pursuant to 28 U.S.C. § 2201. United States Fidelity and Guaranty Company (hereafter, USF & G) issued a banker's blanket bond to Citizens Bank of Tazewell (hereinafter, Citizens), which bond was in force during the tenure of John H. Rife as Executive Vice–President and Chief Executive Officer of Citizens. Citizens takes the position that it is entitled to be indemnified under the insuring agreeing of the banker's blanket bond for losses it suffered due to Rife's fraudulent acts. USF & G takes the position that Citizens' losses were caused by Rife's poor business practices and are not covered under the insuring agreement. Accordingly, USF & G seeks

declaratory judgment that it has no obligation to pay Citizens. Citizens has also moved for judgment in its favor.

## FACTUAL BACKGROUND

In late 1984 Lewis Hannum came to Tazewell County, Virginia, ostensibly to build and operate Tazewell Farmers Mart—a facility with indoor discount stores and an outdoor flea market. Hannum was a convicted felon, having been convicted of armed robbery and possession of heroin in New Jersey. In December 1984, Hannum contacted Rife seeking a $400,000 loan from Citizens. At that time, all requested loans had to be approved by the Executive Committee. Although Rife was not familiar with Hannum's background and apparently made no inquiries, he brought Hannum's loan request to the attention of the Executive Committee. The minutes of this committee meeting reveal that the committee voted to defer the Hannum loan until Citizens could find another bank to participate in the loan.[1]

Although Rife was unsuccessful in finding another bank to participate in the Hannum loan, on May 7, 1985, Rife authorized a $252,000 loan to Hannum for the Tazewell Farmers Mart which was evidenced by a note. This amount was in excess of the amount Rife could loan without the approval of Citizens' Board of Directors.[2] Also in July 1985, Rife authorized an $80,000 loan to Hannum. Both the May 1985 loan and the July 1985 loan were secured by deeds of trust on the property occupied by Tazewell Farmers Mart.

Citizens' Board of Directors did not know of these loans until August 1985. The minutes of the board's meeting on August 14, 1985 reveal that the board "chastised" Rife for the Hannum loans, but expressed its continued confidence in Rife. The board accepted the Hannum loans, but directed Rife to get Hannum's endorsement on the note and to find another bank to

---

**1.** In a participation agreement, the bank that originates the loan essentially sells all or part of the loan to another bank. The amount of the "sale" is used by the originating bank to reduce its potential liability.

**2.** Rife testified in his deposition that after January 8, 1985, he had a loan limit of $50,000.

participate in the loans. The board wanted to sell the Hannum loans "as quickly as possible."

In the fall of 1985 Brenda Whittaker, Hannum's employee and Hannum told Rife that they needed $100,000 for Tazewell Farmers Mart. Rife accompanied Hannum to the First National Bank of Keystone (hereinafter Bank of Keystone). Rife testified at his deposition that the Bank of Keystone agreed to loan Hannum $100,000 and that this amount was therefore new money. Attached to Rife's deposition, however, is an instrument from the Bank of Keystone that this was not "new money" that was intended to go directly to Hannum. This exhibit is entitled "Participation Certificate" and indicates that the Bank of Keystone intended to participate in the $252,000 loan Citizens had made to Hannum. The Participation Certificate reads as follows:

This is to certify that The First National, Keystone, West Virginia 24852 has contributed One Hundred Thousand and 00/100 ($100,000.00) to a loan executed by Tazewell Farmers Mart, Inc., of Tazewell, Virginia 24651 evidenced by a note dated May 7, 1985 in the amount of Two Hundred Fifty Thousand Five Hundred Dollars and 00/100 ($252,000.00). The above-mentioned note is secured by a First Deed of Trust, duly recorded, on the Borrower's premises and is due May 5, 1988. The abovementioned note is payable in monthly installments to Citizens Bank of Tazewell, Tazewell, Virginia 24651 with an interest rate of Fifteen Percent (15%) and that The First National Bank, Keystone, West Virginia 24852 owns an interest in said note in proportion to its aforesaid contribution.

This participation is for the First One Hundred Thousand Dollars and 00/100 ($100,000.00) of the note of Two Hundred Fifty Thousand Five Hundred Dollars and 00/100 ($252,000.00) and entitles the holder (The First National Bank, Keystone, West Virginia 24852) to be paid first on any payments received on principal and/interest. All losses shall be shared by the participant in the same proportion that it owns in said note. Neither party hereto makes any representation or warranty with respect to the loan.

Therefore, according to this document, Bank of Keystone bought $100,000 of the Hannum loan and received first priority as to that amount.[3] Thus Rife should have used the money received from Bank of Keystone to reduce Citizens' potential liability on the Hannum loan, but Rife deposited the money into Tazewell Farmers Mart account.

On May 29, 1986, the Bank of Keystone called this loan. Rife wired the Bank of Keystone $102,911.07 from Citizens' funds. On the debit slip for this transfer, Rife noted "Pur Lincoln Sav. due 4/23/91." During his deposition Rife was asked:

Q. You have indicated on this document on the debit that it was for the purchase, I gather, of Lincoln Savings due 4–23–91, that is a bond on security of some sort?

A. Yes, sir.

Deposition of John H. Rife at 53.

Walter Carr Blankenship, Chairman of the Board of Directors at Citizens, discovered that Citizens had wired the Bank of Keystone $102,911.07 after two employees of the bank asked him why Citizens would do so. Blankenship testified in his deposition that Rife initially denied falsifying the debit slip but that Rife apologized for lying after Blankenship confronted him with documents concerning the wire transfer. As a result of this transaction, Rife was asked to resign as Chief Executive Officer of Citizens.

## ANALYSIS

The policy in question provides:

00042. The court heard testimony from the officers in the Bank of Keystone who entered into this transaction. The testimony was clear that the Bank of Keystone intended to participate with Citizens in the Hannum loan and not to provide "new money" to Hannum.

**3.** After giving initial consideration to this case and concluding that, based upon the depositions and the exhibits thereto, that this transaction was intended to be a true participation loan, the court heard a day and a half of testimony in *United States of America v. Rife,* Crim. No. 89–

The underwriter in consideration of an agreed premium, subject to the declarations, insuring agreements, general agreements, conditions and limitations, and the other terms hereof, agrees to indemnify the insured for: *Fidelity* (1) loss resulting directly from dishonest or fraudulent acts of an Employee committed alone or in collusion with others.

Dishonest or fraudulent acts as used in this insuring agreement shall mean only dishonest or fraudulent acts committed by such employee with the manifest intent

(a) to cause the insured to sustain such loss; and

(b) to obtain financial benefit for the Employee or for any other person or organization intended by the Employee to receive such benefit, other than salaries, commission, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in a normal course of employment.

Therefore Citizens is not entitled to recover unless the acts of Rife were dishonest or fraudulent acts committed with the intent to harm Citizens and to benefit himself or a third party.

The evidence here is clear that Rife's acts were dishonest. The board of directors had instructed him to find another bank to participate in the Hannum loan in order to reduce Citizens' potential liability. Although Rife was successful in getting the Bank of Keystone to participate in the Hannum loan he did not use the funds to reduce Citizens' liability. When Rife deposited the money into the Tazewell Farmers Mart account he was giving Hannum money that belonged to Citizens.[4] This was clearly a dishonest act. Also when the Bank of Keystone called the loan, Rife wired them Citizens' funds to pay off the loan although Citizens never benefitted from this loan. By falsifying the debit slip for this transaction, Rife implicitly acknowledged the dishonesty of his actions.[5] The court concludes that these acts were, at the very least, dishonest.

USF & G argues that Rife's acts were obviously intended to benefit and not to harm Citizens because his acts were designed to decrease the likelihood that Hannum would default. Also, Rife has testified that the transactions were simply mistakes. It is necessary to scrutinize Rife's acts and the circumstances surrounding those acts in order to determine Rife's intent. It is rare that a person will admit to an intention to commit a dishonest or fraudulent act. Even in a criminal context, however, it can be inferred that a person intended the natural and probable consequence of his acts. *Kelly v. Commonwealth,* —— Va.App. ——, ——, 382 S.E.2d 270, 278 (1989).

The result of Rife's depositing the money received from Bank of Keystone into Tazewell Farmers Mart account was that Citizens lost first priority as to $100,000 of the $252,000 Hannum loan amount but did not receive a corresponding reduction in liability. This occurred when Rife knew Citizens wanted him to find another bank to participate in the Hannum loan in order to reduce Citizens' potential liability. With respect to the wire transfer to Bank of Keystone, it is inconceivable that Rife did this to benefit Citizens. Rife used Citizens' funds for the benefit of an individual who was already in default. As an experienced banker, Rife knew that it was probable that Citizens would be harmed because of his acts. It is difficult to conceive a chain of events which more clearly shows that there was an intention to defraud Citizens. Therefore the court concludes that Rife's acts and the circumstances surrounding those acts establish that Rife intended to harm Citizens.

The court concludes that Citizens has shown that Rife's acts were dishonest and were intended to harm Citizens and benefit Hannum. Accordingly, judgment is granted in favor of Citizens.

---

**4.** *See supra* note 1.

**5.** Rife pled guilty to this act, which is in violation of 18 U.S.C. § 1005, in this court on August 1, 1989.

This cause is stricken from the docket of this court.