Filed: November 20, 2000

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 95-1899
(CA-94-1391-A

General Analytics Corporation,

Plaintiff - Appellee,

versus

CNA Insurance Companies, etc.,

Defendant - Appellant.

O R D E R

The court amends its opinion filed June 7, 1996, as follows:

On the cover sheet, section 2 -- the caption is corrected to read "d/b/a Valley Forge Insurance ...."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GENERAL ANALYTICS CORPORATION,
<u>Plaintiff-Appellee,</u>

v.

CNA INSURANCE COMPANIES, d/b/a

Valley Forge Insurance Company,
d/b/a Continental Casualty
Company,
<u>Defendant-Appellant.</u>

No. 95-1899

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-94-1391-A)

Argued: December 4, 1995

Decided: June 7, 1996

Before HALL and NIEMEYER, Circuit Judges, and BUTZNER,
Senior Circuit Judge.

_____

Vacated and remanded by published opinion. Judge Niemeyer wrote
the opinion, in which Judge Hall and Senior Judge Butzner joined.

_____

**COUNSEL**

**ARGUED:** Paul William Grimm, NILES, BARTON & WILMER,
Baltimore, Maryland, for Appellant. Scott William Woehr, DOYLE
& BACHMAN, Washington, D.C., for Appellee. **ON BRIEF:** Mary

Alice McNamara, NILES, BARTON & WILMER, Baltimore, Maryland, for Appellant.

_____

## OPINION

NIEMEYER, Circuit Judge:

When an unidentified employee of General Analytics Corporation altered purchase orders that the company had received from the Internal Revenue Service (IRS) for computer equipment, General Analytics purchased and shipped products to the IRS that it had not ordered. As a result, the IRS refused to accept delivery, and General Analytics incurred a loss of over $94,000.

General Analytics made a claim for the loss under an employee dishonesty insurance policy that had been issued to it by CNA Insurance Companies. When CNA Insurance denied coverage, General Analytics filed this action, and the district court granted General Analytics' motion for summary judgment. Because the question of whether the employee conduct in this case constituted "employee dishonesty" within the meaning of the insurance policy may be answered only by resolving disputed facts, we vacate the district court's judgment and remand the case for further proceedings.

I

General Analytics, a computer and telecommunications company engaged in the business of providing equipment and related services to the federal government, regularly sells computer equipment to the IRS. On four separate occasions in 1993, however, the IRS refused to accept delivery of products shipped by General Analytics because the products were different from those that the IRS had ordered.

After investigating the discrepancies, General Analytics discovered that in each instance, after it had received the purchase order from the IRS, an unidentified employee at General Analytics had altered it, "whiting-out" product, quantity, and price information on the government form and inserting different product, quantity, and price infor-

2

mation. Accordingly, when filling these altered IRS orders, a General Analytics employee ordered products from Pioneer Research Corporation, a supplier, that the IRS had not ordered. When General Analytics shipped the products to the IRS, the IRS refused to accept delivery. Because Pioneer refused return of the products and General Analytics could not sell them to other customers, General Analytics sustained a loss of $94,419.62. Patricia Trenery, a General Analytics employee, acknowledged that she had processed the four altered IRS orders and prepared the General Analytics purchase orders to Pioneer, but she denied altering any IRS purchase orders.

General Analytics presented a claim for the loss to CNA Insurance under an employee dishonesty policy that CNA Insurance has issued to General Analytics. CNA Insurance denied the claim, explaining that General Analytics had failed to demonstrate that an employee had acted with the intent of benefiting himself or some third person, as required by the insurance policy.[1] CNA noted that Trenery, who was the prime suspect for the IRS purchase order alterations, might have acted dishonestly merely "to retaliate against [General Analytics] for re-assigning her to a new job she did not like."

General Analytics filed suit against CNA Insurance for breach of the insurance policy. The parties filed cross-motions for summary judgment, together with a joint stipulation of facts. According to both

_____

[1] The policy provision in question defines employee dishonesty as follows:

> "Employee Dishonesty" . . . means only dishonest acts committed by an "employee," whether identified or not, acting alone or in collusion with other persons, except you or a partner, with the manifest intent to:
>
> (1) Cause you to sustain loss; and also
>
> (2) Obtain financial benefit (other than employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions) for:
>
>  (a) The "employee"; or
>
>  (b) Any person or organization intended by the "employee" to receive that benefit.

3

parties, the sole legal issue presented to the district court was "whether there is sufficient evidence to establish that [General Analytics'] losses were caused by an employee acting with the `manifest intent' to obtain financial benefit for the employee or a third party . . . within the meaning of the policy provision."

The district court concluded that there were no genuine issues of material fact and entered summary judgment for General Analytics in the amount of $94,695.12, together with prejudgment interest from April 14, 1994, the date that General Analytics submitted its written claim to CNA Insurance.[2] In entering judgment in favor of General Analytics, the court reasoned:

> The language of the policy is clear and unambiguous. The requirement of "manifest intent" to benefit a third party is satisfied when the intent of the employee is apparent or obvious. Such intent can be objectively determined from the acts of the employee and the surrounding circumstances. United States Fidelity & Guar. v. Citizens Bank of Tazewell, 718 F. Supp. 471 (W.D. Va. 1989). The absence of any requirement in the policy that the dishonest employee be identified would indicate that direct proof of the subjective intent or motive of the employee is not a necessary component of a claim. The court finds that the stipulated facts are sufficient to establish the manifest intent of an employee of [General Analytics] to benefit a third party at the expense of [General Analytics].

This appeal followed.

_____

[2] CNA Insurance also appeals the district court's award of prejudgment interest calculated from the date on which General Analytics first filed its claim with CNA Insurance. CNA Insurance contends that prejudgment interest should be calculated from the date on which it denied General Analytics' claim. Because further proceedings on remand may render this issue moot, we do not address it here.

4

II

Because this case invokes diversity jurisdiction, we look to Virginia law in construing the CNA Insurance policy. While we have been unable to find any Virginia case interpreting the specific policy language involved here, Virginia courts construe insurance policies in accordance with traditional principles of contract law. See Allstate Ins. Co. v. Eaton, 448 S.E.2d 652, 655 (Va. 1994); see also S. F. v. West Am. Ins. Co., 463 S.E.2d 450, 452 (Va. 1995).

Establishing intent is central to proving coverage under employee dishonesty policies. Such policies are designed to provide coverage for a specific type of loss characterized by embezzlement, which involves the direct theft of money. See Michael Keeley, Employee Dishonesty Claims: Discerning the Employee's Manifest Intent, 30 Tort & Ins. L.J. 915, 919 (1995). To limit coverage to that type of loss, CNA Insurance's employee dishonesty policy at issue here covers dishonest employee conduct only when it is accompanied by (1) an intent to cause General Analytics to sustain a loss and (2) an intent to benefit the employee or some third person. The policy requires both intents and demands that they be "manifest," i.e., readily perceived or obvious. See First Fed'l Sav. & Loan Ass'n v. TransAmerica Ins. Co., 935 F.2d 1164, 1166-67 n.3 (10th Cir. 1991).

Because employee dishonesty policies like CNA Insurance's require proof that the employee have acted to accomplish a particular purpose, they require that the insured establish a specific intent, analogous to that required by the criminal law. Thus, if a dishonest act has the unintended effect of causing a loss to the employer or providing a benefit to the employee, the act is not covered by the policy. See id. at 1166-67 (holding that unintended benefit to third party does not satisfy policy requiring that employee have acted with manifest intent to benefit himself or third party). Stated succinctly, employee dishonesty coverage insures against "loss caused by a thief," as opposed to a fool or a saboteur, "who happens to be an employee of the insured." Robin V. Weldy, A Survey of Recent Changes in Financial Institutions Bonds, 12 Forum 895, 897 (1977).

As a state of mind, intent is often difficult to prove. And because it is abstract and private, intent is revealed only by its connection with

5

words and conduct. See FDIC v. St. Paul Fire and Marine Ins. Co., 942 F.2d 1032, 1035 (6th Cir. 1991) (noting that while intent "is thought to refer to a subjective phenomenon that takes place inside people's heads," the law is concerned only with "the external behavior ordinarily thought to manifest internal mental states"). Thus, evidence of both words and conduct is probative of intent, see, e.g., Municipal Securities, Inc. v. Insurance Co. of North America, 829 F.2d 7, 9 (6th Cir. 1987), and, because context illuminates the meaning of words and conduct, evidence of the circumstances surrounding such words or conduct, including the motive of the speaker or actor, similarly is admissible.

Thus, for example, the mere fact that a person discharges a firearm, killing a bystander, does not establish that the person holding the fire-arm shot the bystander with the intent to kill him. On the other hand, evidence that the person had just quarreled with the bystander (motive), that the person said, after shooting the bystander, "He deserved it" (subjective expression), and that the person was seen aiming the firearm at the bystander (conduct) tends to establish the person's intent to kill the bystander.

It is readily apparent that determining intent is fact-intensive, and when the circumstantial evidence of a person's intent is ambiguous, the question of intent cannot be resolved on summary judgment. See First Nat'l Bank v. Lustig, 961 F.2d 1162, 1166-67 (5th Cir. 1992).

CNA Insurance argues that the district court erred in concluding that "the employee's subjective intent or motive is not a necessary component of an employee dishonesty claim, and . . . that [such] evidence . . . is irrelevant when evaluating such a claim." Rather, CNA Insurance maintains that "whether an employee manifestly intended to confer a financial benefit on a third party . . . requires the fact finder to determine the true purpose of the dishonest employee" from all of the "relevant evidence . . . both objective and subjective." According to CNA Insurance, "Trenery's true purpose was to injure [General Analytics] as a payback for perceived injustices" and, there-fore, the incidental benefit in the form of profits conferred on Pioneer when it refused return of the merchandise does not satisfy the policy's requirement that Trenery act with the intent to benefit a third person.

6

General Analytics responds that the "external manifestations of internal `intent' . . . speak for themselves." Distinguishing "motive" from "intent," General Analytics contends that "[r]egardless of <u>why</u> the dishonest [General Analytics] employee whited-out the forged Government delivery orders . . . she <u>manifestly</u> did it <u>intentionally</u>." According to General Analytics, it can recover under CNA Insurance's policy because this case involves an employee's intentional conduct that conferred a financial benefit on Pioneer.

From our review of the record presented on the cross-motions for summary judgment, we conclude that a dispute of material fact remains on the issue of whether the dishonest employee's acts in this case were accompanied by the "manifest intent" to benefit the employee or a third person. General Analytics presented undisputed evidence that one of its employees altered purchase orders that it received from the IRS. General Analytics also established that by causing it to fill the altered purchase orders, the dishonest employee conferred a benefit on Pioneer in the form of profits from the sale and caused a loss to General Analytics from ordering useless products. It accordingly argues that the dishonest employee must have acted with the intent to benefit Pioneer because we must assume that he acted with the knowledge of the natural and probable consequences of his actions and, therefore, knew that the issuance of the purchase orders to Pioneer would benefit it. While such conduct could have been accompanied by both the intent to benefit Pioneer and the intent to injure General Analytics, the evidence in this case of employee intent to benefit Pioneer is ambiguous, allowing for the possibility that the employee conduct was not accompanied by that intent.

CNA Insurance presented evidence that Trenery, who is suspected of the dishonest conduct, was unhappy with the way General Analytics had fired her previous boss and that Trenery had testified on his behalf in a lawsuit against General Analytics. Moreover, the evidence shows that Trenery had no connection with Pioneer and had no apparent reason to provide a benefit to Pioneer. Finally, there is no evidence to suggest that Trenery or any other employee knew that Pioneer would refuse return of the products. Thus, the record contains ample support for CNA Insurance's theory that in altering purchase orders and thereby causing General Analytics to sustain a loss, Tren-

7

ery acted out of revenge and not for the purpose of benefiting herself or Pioneer.

Accordingly, we vacate the summary judgment and remand the case for further proceedings.

VACATED AND REMANDED

8