# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3887

_____

R & J Enterprizes,       *

     *

        Appellant,      *

     *    Appeal from the United States

   v.      *    District Court for the

     *    Southern District of Iowa.

General Casualty Company of      *

Wisconsin,      *

     *

        Appellee.      *

_____

Submitted:  September 21, 2010
Filed:  December 16, 2010

_____

Before RILEY, Chief Judge, MELLOY and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

R & J Enterprizes, Inc., doing business as Country Club Coffee, appeals from a grant of summary judgment by the district court[1] in favor of General Casualty Company of Wisconsin ("General Casualty").  Country Club Coffee's complaint sought a declaration that General Casualty owes it coverage under its commercial marketplace policy and damages under several theories of liability.  The district court granted summary judgment for General Casualty on all claims.  We affirm.

_____

[1]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

I.

Country Club Coffee purchased a commercial marketplace policy from General Casualty and paid an additional premium to include an optional coverage for "employee dishonesty." The added provision covers losses resulting from dishonest acts committed by employees with the intent to "[o]btain financial benefit (other than salaries . . . or other employee benefits earned in the normal course of employment)."

Country Club Coffee employed a service technician from May 2001 until August 2006. During this time, the employee illegally obtained more than $100,000 by overstating on his time cards the number of hours that he worked. After discovering the theft, Country Club Coffee filed a claim with General Casualty on November 28, 2006, under its employee dishonesty coverage. General Casualty denied the claim on October 29, 2007, asserting that the employee dishonesty provision does not cover losses paid in the form of excess payroll.

Following this denial, Country Club Coffee filed the present lawsuit, invoking federal jurisdiction under 28 U.S.C. § 1332. The district court granted summary judgment on Country Club Coffee's claims seeking a declaration of coverage and for breach of contract. The court concluded that the language of the employee dishonesty policy unambiguously excludes from coverage "the unauthorized salary amounts" obtained by Country Club Coffee's employee. The court granted summary judgment on the breach of reasonable expectations, breach of implied warranty, and unconscionability claims after determining that the record did not support them.

Country Club Coffee appeals, arguing that the district court erred in granting summary judgment. Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). We review *de novo* the district court's interpretation of provisions in an insurance contract and

its decision to grant summary judgment. *Transcon. Ins. Co. v. W.G. Samuels Co.,* 370 F.3d 755, 757 (8th Cir. 2004).

II.

The parties agree that Iowa law governs this diversity action. Under Iowa law, a court must construe insurance policies to give effect to the intent of the parties. *Nationwide Agri-Business Ins. Co. v. Goodwin*, 782 N.W.2d 465, 470 (Iowa 2010). Intent is determined by the language of the policy, unless there is ambiguity. *Id.* "Ambiguity exists if, after the application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty results as to which one of two or more meanings is the proper one." *Cairns v. Grinnell Mut. Reins. Co.*, 398 N.W.2d 821, 824 (Iowa 1987) (internal quotation omitted). A mere disagreement between parties will not establish ambiguity. *Kibbee v. State Farm Fire & Cas. Co.*, 525 N.W.2d 866, 868 (Iowa 1994). Rather, the policy language must be "susceptible to two *reasonable* interpretations." *Id.* If there is ambiguity, Iowa law requires construction of a policy provision in the light most favorable to the insured. *Cairns*, 398 N.W.2d at 824.

The employee dishonesty provision in the insurance policy states:

> 4.    Employee Dishonesty
>
> a. We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:
>
> (1)  Cause you to sustain loss or damage; and also
>
> (2)  Obtain financial benefit (*other than salaries*, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or

-3-

> other *employee benefits earned in the normal course of employment*) for:
>
> (a) Any employee; or
>
> (b) Any other person or organization.

J.A. 64 (emphasis added).

We conclude that the parenthetical in section 4(a)(2) unambiguously precludes coverage for dishonest acts of an employee with an intent to procure enhanced compensation from the employer. The enumerated forms of financial benefit, together with the residual reference to "other employee benefits," demonstrate that the policy excludes coverage for the category of benefits that may be "earned in the normal course of employment." Hourly wages are plainly within the category of financial benefits for which there is no coverage under the limiting parenthetical.

Country Club Coffee contends that the employee dishonesty provision unambiguously covers its loss, because the money it overpaid to its employee was stolen, not earned, and therefore was not a salary or employee benefit "earned in the normal course of employment." It relies on the dictionary definitions of "salary" as "fixed regular wages," and "earned" as something that is "deserved," "entitled to," or "obtained as reward." The company contends that because its dishonest employee was not entitled to the overpaid wages, the wages were not "earned," and the limiting parenthetical in section 4(a)(2) does not preclude coverage.

This interpretation is unreasonable because it fails to consider the limiting language in the context of the entire provision. Under Iowa law, particular words and phrases must be interpreted in context, *Hartig Drug Co. v. Hartig*, 602 N.W.2d 794, 798 (Iowa 1999), and we must "strive to give each word a meaning that does not render it superfluous." *Kibbee*, 525 N.W.2d at 869. Under Country Club Coffee's

proposed interpretation, the limiting language would be superfluous, because benefits *actually* earned do not result from dishonest acts. *See Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 858 (5th Cir. 2003) (per curiam); *James B. Lansing Sound, Inc. v. Nat'l Union Fire Ins. Co.*, 801 F.2d 1560, 1567 (9th Cir. 1986). In other words, "the language excluding salaries presumes that there are acts of employee dishonesty that result in increased employee benefits that the insured and insurer agreed to exclude from coverage." *Performance Autoplex II*, 322 F.3d at 858.

In contrast, an interpretation that rejects coverage gives meaning to the entire employee dishonesty provision. Under this view, "earned in the normal course of employment" describes the *category* of benefits that are not covered by the provision. Given the context, Country Club Coffee's reliance on the dictionary definition of "earned" is misplaced: "'[U]nearned salaries and commissions are nevertheless still salaries and commissions and therefore belong to the generic category of employee benefits that are normally earned in the course of employment.'" *Id.* (quoting *Hartford Accident & Indem. Ins. Co. v. Wash. Nat'l Ins. Co.*, 638 F. Supp. 78, 84 (N.D. Ill. 1986)).

Although the limiting parenthetical in section 4(a)(2) means that the policy does not cover all types of employee theft, the employee dishonesty provision still provides coverage for many dishonest acts of employees. Among other things, it covers theft by employees through forging checks, fraudulently using employer credit cards, *see Glaser v. Hartford Cas. Ins. Co.*, 364 F. Supp. 2d 529, 531-32 (D. Md. 2005), embezzlement, *see Universal Underwriters Ins. Co. v. Buddy Jones Ford, Lincoln-Mercury, Inc.*, 734 So. 2d 173, 174 (Miss. 1999), stealing from inventory, *see Performance Autoplex II*, 322 F.3d at 850-51, and altering purchase orders to confer a benefit on the selling company. *See Gen. Analytics Corp. v. CNA Ins. Cos.*, 86 F.3d 51, 53-55 (4th Cir. 1996). Under our interpretation, therefore, the entire provision has meaning. Country Club Coffee's contrary interpretation is unreasonable.

We also reject Country Club Coffee's alternative argument that the provision is ambiguous because the Supreme Court of Alabama, in *Cincinnati Insurance Co. v. Tuscaloosa County Parking & Transit Authority*, 827 So. 2d 765 (Ala. 2002), interpreted the provision consistent with its view. Ambiguity is not established merely because courts reach inconsistent results. *Cf. Moskal v. United States*, 498 U.S. 103, 108 (1990). The contrary interpretation must be reasonable, and for the reasons discussed, we conclude that it is not.

The employee dishonesty provision does not cover losses resulting from overpaid employee benefits of the type earned in the normal course of business. In this case, Country Club Coffee paid the dishonest employee on an hourly basis. Whether this type of payment was a salary, *i.e.*, a "fixed regular payment made by an employer to an employee in return for work," *Shorter Oxford English Dictionary* 2653 (5th ed. 2002), or an "employee benefit" not expressly enumerated in the parenthetical but covered by the residual clause, the wages are within the category of payments that are excluded from coverage. The district court therefore properly granted summary judgment on Country Club Coffee's claims for declaratory judgment and breach of contract.

III.

We now turn to Country Club Coffee's remaining claims based on breach of reasonable expectations, breach of implied warranty, and unconscionability. We agree with the district court that Country Club Coffee has failed to establish a submissible case on any of these claims.

A.

Iowa law allows an insured to use the doctrine of reasonable expectations to avoid an insurance policy limitation that: "(1) is bizarre or oppressive; (2) eviscerates

terms explicitly agreed to; or (3) eliminates the dominant purpose of the transaction." *Cairns*, 398 N.W.2d at 825. To recover under this doctrine, the insured must make a threshold showing that "the policy is such that an ordinary layperson would misunderstand its coverage," or prove "circumstances attributable to the insurer that fostered coverage expectations." *LeMars Mut. Ins. Co. v. Joffer*, 574 N.W.2d 303, 311 (Iowa 1998) (quotation omitted). Country Club Coffee has failed to establish one of the prerequisites necessary for application of this doctrine.

The policy language is unambiguous, so we cannot say that an ordinary layperson would misunderstand its coverage. Country Club Coffee urges, however, that the increased premiums for optional coverage and the understandings of the insurance agents who sold the policy are circumstances that fostered coverage expectations. We disagree. Country Club Coffee received coverage for certain losses caused by dishonesty, and it thus received value for the increase in premiums. Increased premiums alone cannot establish that General Casualty fostered expectations of coverage specifically for employee theft in the form of excessive compensation. And abstract understandings of insurance agents, without evidence of specific assurances of coverage for wages obtained through dishonesty, cannot establish a circumstance that fostered coverage expectations. *See id.* As a matter of law, Country Club Coffee is not entitled to coverage under the reasonable expectations doctrine.

B.

Country Club Coffee next contends that it is entitled to recovery under the theory of implied warranty. Furnishing a policy for general purposes is insufficient to create an implied warranty under Iowa law. To trigger this cause of action, the policy must respond to a particular need. *Farm Bureau Mut. Ins. Co. v. Sandbulte*, 302 N.W.2d 104, 111 (Iowa 1981). To recover for breach of implied warranty, the insured must also show "(1) that the insurer had reason to know the particular purpose

for which the policy is purchased; (2) that the insured relied upon the company's skill or judgment in furnishing such coverage; and (3) that the resulting implied warranty was breached." *Id.* at 110.

Country Club Coffee does not allege that it notified General Casualty that it purchased the policy for a particular purpose, *i.e.*, one different in kind or extent from the ordinary use of the policy in question. *See id.* at 110-11. Instead, Country Club Coffee relies on affidavits of the two insurance agents who sold the policy. These affidavits aver that in the opinion of the agents, the policy covers the theft by Country Club Coffee's employee. An erroneous opinion by an insurance agent, however, does not establish that Country Club Coffee purchased the employee dishonesty coverage for the particular purpose of insuring against employee payroll theft, or that General Casualty had reason to know of any such purpose. The district court thus properly concluded the record does not support an implied warranty claim.

C.

Finally, Country Club Coffee asserts that the limitations clause in the employee dishonesty provision is unenforceable because it is unconscionable. "[A] bargain is unconscionable if it is such as no person in his or her senses and not under delusion would make on the one hand, and as no honest and fair person would accept on the other." *Home Fed. Sav. & Loan Ass'n v. Campney*, 357 N.W.2d 613, 619-20 (Iowa 1984). In reviewing a claim that a provision is unconscionable, the court should examine the elements of assent, unfair surprise, notice, disparity of bargaining power, and substantive unfairness. *Id.* at 618. Here, these factors do not support a finding that the employee dishonesty provision is unconscionable.

Country Club Coffee assented to the terms of the policy. The company opted to buy the additional employee dishonesty coverage and chose to keep it for several years. There is no plausible claim of unfair surprise or lack of notice, because the

limitations clause is unambiguous and plainly set forth within the policy provision. The first page of the policy, moreover, highlights that various provisions restrict coverage and the insured should read the entire policy carefully. Although there may have been some disparity in bargaining power, given Country Club Coffee's status as a small, closely-held corporation, mere inequality in bargaining power does not make the contract unconscionable, *see id.* at 619, and the provision at issue was optional in any event. The coverage provision is not substantively unfair. Country Club Coffee paid for and received coverage for certain losses caused by employee dishonesty. A policy covering *all* losses resulting from financial benefits obtained through employee dishonesty presumably would have demanded a greater premium. The district court thus properly concluded that Country Club Coffee failed to establish a submissible case of unconscionability.

* * *

For the foregoing reasons, the judgment of the district court is affirmed.

_____